STATE of Wisconsin, Plaintiff-Respondent,

v.

James T. SMITH, Defendant-Appellant.†

Court of Appeals

*No. 92–0458–CR. Submitted on briefs June 30, 1992.—Decided August 26, 1992.*

(Also reported in 490 N.W.2d 40.)

† Petition to review denied.

701

702

On behalf of the defendant-appellant, the cause was submitted on the briefs of *James E. Doyle,* attorney general and *David J. Becker,* assistant attorney general.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Jack E. Schairer* assistant state public defender.

Before Nettesheim, P.J., Anderson and Snyder, JJ.

NETTESHEIM, P.J.   James T. Smith appeals from a judgment of conviction for arson and twelve counts of first-degree reckless endangerment, contrary to secs. 943.02(1)(a) and 941.30(1), Stats., and from an order denying his motion for postconviction relief. Smith contends that the trial court erred when it determined that: (1) the statutory definition of intent as found in sec. 939.23(3), Stats., was neither unconstitutionally violative of Smith's due process rights nor vague; (2) his defense counsel's failure to request both a unanimous jury instruction and a cautionary accomplice instruction did not constitute ineffective assistance of counsel; and (3) certain testimony from a police officer did not amount to an opinion about the truthfulness of an accomplice.

We conclude that under the rationale of *Schad v. Arizona,* 111 S. Ct. 2491 (1991), the definition of intent as found in sec. 939.23(3), Stats., was neither vague nor a violation of Smith's due process rights. Because sec. 939.23(3) does not set forth a forbidden combination of alternative mental states for satisfying intent, we also disagree with Smith's contention that his defense counsel's failure to request a unanimity instruction was ineffective assistance of counsel. The failure to request the standard instruction which tells the jury to view an accomplice's testimony with caution and suspicion also was not ineffective assistance of counsel. Finally, we conclude that testimony from a police officer about the interrogation of Smith's accomplice was not an improper opinion as to the accomplice's truthfulness. We affirm

704

the judgment of conviction and the order denying Smith's postconviction motion for relief.

On May 17, 1990, a fire occurred at the twelve-unit village of Oakfield apartment building where Smith lived. Smith was later arrested and charged with one count of arson and twelve counts of first-degree reckless endangerment in connection with the fire.

At a pretrial motion hearing, Smith challenged the constitutionality of sec. 939.23(3), Stats., the criminal intent statute, contending that the statute's alternative definitions of intent were vague and violated his constitutional right to due process. The trial court denied the motion, and Smith's jury trial took place on February 13, 1991.

A critical witness against Smith was an accomplice, Scott Kentopp, who implicated Smith as being responsible for the fire. Kentopp, who was granted use immunity in return for his testimony, testified that on the day of the fire Smith gave him the only key to the back door of the basement and instructed him to unlock the door. Smith then joined Kentopp in the basement area, where he directed Kentopp to act as a lookout by watching the doors to the basement. Kentopp testified that shortly thereafter he heard sounds similar to the pouring of a liquid and the striking of a match in the front area of the basement where Smith was standing. Kentopp further testified that Smith's motive for starting the fire was that Smith did not like the tenant who lived in apartment four and wanted to "smoke [his] stuff out." After the fire was started, Kentopp and Smith then walked out the back door of the basement and westbound on White Street. The two returned to the burning apartment building shortly thereafter. Though no physical evidence was presented that arson was the cause of the fire, wit-

nesses called by the state tended to corroborate Kentopp's version of the event.

The state also called as a witness the police detective who conducted the post-fire interrogation of Kentopp. The detective testified that during the interrogation Kentopp initially denied any involvement in starting the fire, but later changed his story to reflect what the detective perceived to be the truth. Specifically, the detective testified that:

> Well, as I stated before, I thought, in my opinion, that Mr. Kentopp knew a lot more than he was telling me, but it was my thought I was getting closer to a point with him where he might just tell me the truth, so it was at that point that Officer Tzakais came in and told him that Mr. Smith was cooperating, and, after Tzakais left the room, Kentopp and I talked more about his fear of Mr. Smith—and along those lines—and it was at that point that he began to change his story to why [sic] I felt was the truth.

At the jury instruction conference after the close of the evidence, Smith's counsel did not ask for Wis J I—Criminal 245, the standard instruction which cautions the jury that it is ordinarily unsafe to convict on the basis of an accomplice's uncorroborated testimony. The court did, however, instruct the jury that Kentopp's testimony was to be examined with greater care because of the grant of use immunity in return for his testimony at trial.

The jury convicted Smith of arson and twelve counts of first-degree reckless endangerment, and the court sentenced Smith to forty years' imprisonment. After denial of his postconviction motions, Smith brought this appeal.

Smith first challenges the constitutionality of Wisconsin's criminal intent statute that allows a conviction

for arson if the defendant either had the purpose to cause the fire or was aware that his or her conduct was practically certain to cause that result.[1] *See* sec. 939.23(3), Stats. Smith contends that the statute is unconstitutional because its alternative mental states—purpose or knowledge—are conceptually so unrelated that each alternative creates a separate offense when applied to the crime of arson. *See Schad,* 111 S. Ct. at 2498. Consequently, Smith urges us to hold that it was error to allow the jury to reach a verdict without agreeing upon which of the two mental states he harbored at the time he committed the offense.

The constitutionality of a statute is a question of law which we review *de novo. State v. Bertrand,* 162 Wis. 2d 411, 415, 469 N.W.2d 873, 875 (Ct. App. 1991). There is a strong presumption in favor of a statute's constitutionality, and if possible we will interpret a statute to preserve it. *State v. Hurd,* 135 Wis. 2d 266, 271, 400 N.W.2d 42, 44 (Ct. App. 1986). In addition, the party challenging the constitutionality of a statute bears the burden to show its invalidity beyond a reasonable doubt. *State v. Dennis,* 138 Wis. 2d 99, 103, 405 N.W.2d 711, 713 (Ct. App. 1987).

The United States Supreme Court rejected an argument similar to the one advanced here by Smith in *Schad.* In *Schad,* the Court sustained a first-degree murder conviction against the challenge that the Arizona statute applicable to the defendant's case unconstitutionally allowed the jury to convict without agreeing on

---

[1]Section 943.02, Stats., states in pertinent part:

**Arson of buildings; damage of property by explosives. (1)** Whoever does any of the following is guilty of a Class B felony:

(a) By means of fire, intentionally damages any building of another without his consent.. . .

one of the alternative theories of premeditated and felony murder contained within the statute.[2] *Schad,* 111 S. Ct. at 2494–95.

Nonetheless, the plurality opinion recognized that there are due process limitations on a state's ability to define different states of mind as alternative means of committing a single offense, thereby permitting a conviction without jury agreement as to which state of mind actually occurred. *Id.* at 2497. Consequently, the plurality set forth a test for determining whether alternative mental states merely constitute a means of satisfying a single *mens rea* element, or instead create separate crimes which require a jury to indicate on which of the alternatives it bases the defendant's guilt. The plurality stated that:

> [W]e look both to history and wide practice as guides to fundamental values, as well as to narrower analytical methods of testing the moral and practical equivalence of the different mental states that may satisfy the mens rea element of a single offense. The enquiry is undertaken with a threshold presumption of legislative competence to determine the appropriate relationship between means and ends in defining the elements of a crime.

*Id.* at 2500.

We first turn to whether Wisconsin's intent statute has historical support and reflects widespread practice.

---

[2]The Arizona statute defined first-degree murder in relevant part as "murder which is . . . wilful, deliberate or premeditated . . . or which is committed . . . in the perpetration of, or attempt to perpetrate . . . robbery." *See Schad v. Arizona,* 111 S. Ct. 2491, 2495 (1991). The defendant argued that the jury should be required to agree upon whether he murdered either with premeditation or in the course of committing a robbery or other felony. *Id.* at 2495–96.

In turning to these sources, we are mindful of the *Schad* plurality's statement:

> Where a State's particular way of defining a crime has a long history, or is in widespread use, it is unlikely that a defendant will be able to demonstrate that the State has shifted the burden of proof as to what is an inherent element of the offense, or has defined as a single crime multiple offenses that are inherently separate.

*Id.* at 2501.

The legislative history of the present sec. 939.23(3), Stats., supports the conclusion that Wisconsin has a well established history of using a two-pronged concept of intent. In 1955, the legislature redrafted the criminal code. Section 1, ch. 696, Laws of 1955. Since that time, intent has been defined in terms of the alternative mental states of purpose and knowledge. The legislature defined intent as follows:

> (3) "Intentionally" means that the actor either has a purpose to do the thing or cause the result specified or believes that his act, if successful, will cause that result.

Section 939.23(3), Stats. (1955). The current definition of criminal intent, as amended in 1987, is essentially a restatement of the 1955 definition:

> (3) "Intentionally" means that the actor either has a purpose to do the thing or cause the result specified, or is aware that his or her conduct is practically certain to cause that result.

Section 472zkbf, 1987 Wis. Act 399. We view the 1955 formulation of knowledge—"believes that his act, if successful, will cause that result"—as the functional equivalent of the present definition—"is aware that his or her

709

conduct is practically certain to cause that result." For all purposes relevant to the issue before us, this two-pronged concept of intent reflects over thirty-five years of continuous use and acceptance. When we combine that with the fact that criminal intent has traditionally been understood as combining the alternative mental states of purpose and knowledge, *United States v. United States Gypsum Co.,* 438 U.S. 422, 445 (1978),[3] we find it difficult to agree with Smith's contention that Wisconsin's criminal intent statute represents a recent innovation.

We also deem it significant that numerous other state statutes reflect similar variations of purpose and knowledge as alternative means of satisfying the element of intent, not only in the context of legislation defining arson, but in the context of other crimes as well.[4]

---

[3] *See also* Cook, *Act, Intention, and Motive in the Criminal Law,* 26 Yale L.J. 645, 653–58 (1917); Perkins, *A Rationale of Mens Rea,* 52 Harv. L. Rev. 905, 910–11 (1939).

[4] *See, e.g.,* Ind. Code Ann. sec. 35–43–1–1(a)(1) (Burns 1992) ("A person who, by means of fire or explosive, knowingly or intentionally damages . . . a dwelling of another person without his consent . . . commits arson . . .."); Iowa Code sec. 712.1 (West 1992) ("Causing a fire or explosion . . . in or near any property with the intent to destroy or damage such property, or with the knowledge that such property will probably be destroyed or damaged, is arson . . .."); Mont. Code Ann. sec. 45–6–103(1)(a) (1991) ("A person commits the offense of arson when, by means of fire or explosives, he knowingly or purposely . . . damages or destroys an occupied structure which is property of another without consent . . .."). *See also* Alaska Stat. sec. 11.56.805(a) (1991) ("A person commits the crime of false accusation if the person knowingly or intentionally initiates a false complaint . . .."); Ariz. Rev. Stat. Ann. sec. 13–1406.A (1991) ("A person commits sexual assault by intentionally or knowingly engaging in sexual intercourse or oral sexual contact with any person without consent . . .."); Ill. Rev.

Although Smith makes much of the fact that the legislatures of other states are not unanimous in this respect, we conclude that the use of purpose and knowledge as alternative means of satisfying intent is sufficiently well established to convince us that our statute is not "a freakish definition of the elements of a crime that finds no analogue in history or in the criminal law of other jurisdictions." *Schad,* 111 S. Ct. at 2501.

The final question of the *Schad* analysis is whether purpose and knowledge, as supposed equivalent means of satisfying the element of intent, "reasonably reflect notions of equivalent blameworthiness or culpability." *Id.* at 2503. Smith argues that one who acts with a purposeful state of mind is more culpable and blameworthy than one who acts only with the knowledge that his conduct is practically certain to cause a particular result. Nothing in Smith's analysis persuades us, however, that there is any practical difference in culpability between the two. The traditional view is that acting with knowledge that one's conduct is practically certain to cause harm is just as blameworthy as acting with a purpose to cause that harm. *See United States Gypsum Co.,* 438 U.S. at 445-46; 1 W. LaFave & A. Scott, *Substantive*

Stat. ch. 38, para. 12-3.2.(a)(1) (1991) ("A person commits Domestic Battery if he intentionally or knowingly without legal justification by any means . . . causes bodily harm . . . ."); Me. Rev. Stat. Ann. tit. 17-A, sec. 201.1.A. (1991) ("A person is guilty of murder if . . . [h]e intentionally or knowingly causes the death of another human being . . . .."); Or. Rev. Stat. sec. 163.175(1)(a) (1991) ("A person commits the crime of assault in the second degree if the person . . . [i]ntentionally or knowingly causes serious physical injury to another . . . .."); Utah Code Ann. sec. 76-5-203(1)(a) (1992) ("Criminal homicide constitutes murder if the actor . . . intentionally or knowingly causes the death of another . . . ..").

*Criminal Law* sec. 3.5, at 302–03 (1986); W. Dickey, D. Schultz & J. Fullin, Jr., *The Importance of Clarity in the Law of Homicide: The Wisconsin Revision,* 1989 Wis. L. Rev. 1323, 1336–37 (1989). We think it reasonable that where one engages in conduct knowing it is practically certain to cause a fire, the culpability involved is morally equivalent to the situation where one consciously acts with a purpose to cause a fire. Consequently, we disagree that the degrees of blameworthiness reflected by the alternative states of purpose and knowledge are inherently so different that they identify different offenses. *See Schad,* 111 S. Ct. at 2503–04.

Finally, as sec. 939.23(3), Stats., does not contain a forbidden combination of alternative forms for satisfying intent under *Schad,* we also reject Smith's argument that the combination renders the statute vague. The statute's two-pronged definition of intent—one who has a purpose to do the thing or cause the result, or is aware that his or her conduct is practically certain to cause that result—is not so obscure that persons of common intelligence must necessarily guess at its meaning and differ as to its applicability. *See State v. Ehlenfeldt,* 94 Wis. 2d 347, 355, 288 N.W.2d 786, 789 (1980). The two mental states have traditionally been viewed as functional equivalents, and the language used to define each is sufficiently clear and definite to permit one to understand what conduct is prohibited when applied to a particular crime. *See id.* at 356, 288 N.W.2d at 790.

Smith next argues that his defense counsel's failure to request a unanimous jury instruction was ineffective assistance of counsel. He argues that because of the disparity between purpose and knowledge, the jury was required to unanimously agree upon which of the mental states it based Smith's guilt.

Smith's argument, however, again runs directly counter to the plurality's holding in *Schad*. *Schad* held that jury agreement as to which state of mind occurred was not required if the mental states identified within the statute were merely alternative means of committing a single offense. *Schad,* 111 S. Ct. at 2497. Under Wisconsin law, it is equally clear that jury unanimity in the determination of the mode of committing a single crime is not required. *State v. Crowley,* 143 Wis. 2d 324, 333, 422 N.W.2d 847, 851 (1988). Rather, unanimity is required only with respect to the ultimate issue of the defendant's guilt or innocence of the crime charged, and is not required with respect to the alternative means or ways in which the crime can be committed. *Holland v. State,* 91 Wis. 2d 134, 143, 280 N.W.2d 288, 292–93 (1979), *cert. denied,* 445 U.S. 931 (1980). *See also State v. D'Acquisto,* 124 Wis. 2d 758, 766-67, 370 N.W.2d 781, 786 (1985).

■

In this case, then, it was not necessary that all jurors agree that Smith acted with a purpose to cause the fire, or that he acted with an awareness that his conduct was practically certain to cause that result. These are merely alternative means in which intent is manifested under the statute. It was sufficient that the jury unanimously found that Smith acted intentionally when it concluded he was guilty of arson. Because the jury was not required to agree on Smith's particular mental state, only that he acted with intent, his defense counsel's failure to request a unanimity instruction was not ineffective assistance.

Smith next contends that because no evidence was presented to corroborate Kentopp's testimony, the failure to request or give the standard instruction regarding the credibility of accomplices constituted ineffective

assistance of counsel. The state argues, however, that not only was Kentopp's testimony substantially corroborated, but Smith's dual failure to either request the instruction or object to its absence waived any such claim of error on appeal.[5]

Whether counsel's actions constitute ineffective assistance is a mixed question of law and fact. *State v. Johnson,* 133 Wis. 2d 207, 216, 395 N.W.2d 176, 181 (1986). The trial court's findings of what the attorney did and the basis for the challenged conduct are factual and will be upheld unless clearly erroneous. *Id.* However, whether the attorney's conduct amounted to ineffective assistance is a question of law which we review *de novo. Id.*

The two-pronged test for ineffective assistance of counsel is deficient performance of counsel and prejudice to the defendant. *Strickland v. Washington,* 466 U.S.

---

[5]We note that the general rule requires a party to object to a jury instruction, or lack thereof, at the instruction conference or there is a waiver of the right to challenge the instruction on appeal. Section 805.13, Stats. Though there are no judicially created exceptions to the waiver rule, *see State v. Schumacher,* 144 Wis. 2d 388, 398–99, 424 N.W.2d 672, 676 (1988), we have a broad discretionary power of reversal under sec. 752.35, Stats., when we are satisfied that the real controversy was not fully tried or there was a miscarriage of justice. *See Vollmer v. Luety,* 156 Wis. 2d 1, 19, 456 N.W.2d 797, 805 (1990). It is also appropriate to review an alleged error in the jury instructions under a claim of ineffective assistance of counsel, which is the argument Smith makes here. *See Schumacher,* 144 Wis. 2d at 408 n.14, 424 N.W.2d at 680. Though Smith alternatively argues that the absence of the instruction was also either plain error or resulted in a miscarriage of justice, because of the result we reach we need only address his ineffective assistance of counsel argument.

668, 687 (1984); *State v. Pitsch,* 124 Wis. 2d 628, 633, 369 N.W.2d 711, 714 (1985). The test for the performance prong is whether counsel's assistance was reasonable under the facts of the particular case, viewed as of the time of counsel's conduct. *Pitsch,* 124 Wis. 2d at 636–37, 369 N.W.2d at 716. Because we conclude that there was substantial corroboration of the accomplice's testimony, the failure to request an accomplice instruction did not constitute deficient performance.

It is well settled in Wisconsin that the failure to give an accomplice instruction is not error where the testimony of the accomplice is sufficiently corroborated. *Linse v. State,* 93 Wis. 2d 163, 171, 286 N.W.2d 554, 558 (1980); *Bizzle v. State,* 65 Wis. 2d 730, 734, 223 N.W.2d 577, 579 (1974); *Cheney v. State,* 44 Wis. 2d 454, 467–68, 171 N.W.2d 339, 346 (1969), overruled on other grounds, Byrd v. State, 65 Wis. 2d 415, 222 N.W.2d 696 (1974). The instruction is chiefly aimed at the situation where the state's case against the accused consists of nothing more than the accomplice's testimony, *Cheney,* 44 Wis. 2d at 467, 171 N.W.2d at 346, and thus minimal corroboration of the accomplice's testimony will suffice to obviate the requirement that the trial court give the instruction. *See Bizzle,* 65 Wis. 2d at 734, 223 N.W.2d at 579.

At trial, witnesses corroborated Kentopp's testimony that he and Smith left the building and walked west on White Street right after the fire started, and that the two casually returned to the burning building shortly thereafter. Tenants living in the building confirmed that Smith and the tenant in apartment four were less than friends. The local fire chief testified that, based on his experience and the observations he made at the scene, he believed that the fire started in the front portion of the basement. Additionally, several witnesses who observed

the fire in its beginning stages testified that smoke was initially coming from the front area of the basement. The police officer who interviewed Kentopp at the scene testified that Kentopp gave him the key which Kentopp got from Smith to unlock the back basement door. Kentopp's wife testified that prior to the fire both Smith and Kentopp suggested that they were going to start a fire.

Because the amount of corroboration presented was more than sufficient to obviate the requirement for the instruction in this case, we disagree with Smith's argument that his counsel's failure to request the instruction was ineffective assistance.

We further note that in addition to giving the standard instruction regarding the credibility of witnesses, Wis JI—Criminal 300, the trial court gave a modified version of Wis JI—Criminal 246, the use immunity instruction. That instruction largely resembled the standard accomplice instruction because it told the jury to view Kentopp's testimony with caution and suspicion.[6] Also, on direct examination the state called to the jury's attention numerous reasons for being suspicious of Kentopp's testimony, including his prior conviction, his grant of use immunity in exchange for his testimony against Smith, and that Kentopp was also charged with arson and endangering safety in connection with his

---

[6]The modified instruction specifically stated that:

> Scott Kentopp has been granted use immunity, which means the testimony he has given cannot be used to prove his involvement in any crime. This testimony should be examined by you with greater care than the testimony of an ordinary witness. You should consider whether his testimony may be affected by his own interest. After such consideration, you may give the testimony of a witness granted immunity the weight you feel it deserves.

involvement in the fire.[7]

Smith's final argument is that a police detective was impermissibly allowed to give opinion testimony about Kentopp's truthfulness when the detective testified that during the interrogation Kentopp initially denied involvement in starting the fire, but later changed his story to reflect what the detective perceived to be the truth. He claims, in effect, that the testimony amounts to an expert opinion that Kentopp was telling the truth about Smith starting the fire. However, Smith did not object to the testimony. Alleged errors not objected to at

---

[7]In considering whether Smith's conviction was swayed or influenced by omitting the accomplice instruction, we find significant whether the jury was otherwise made aware of Kentopp's interests during the trial, such as through direct examination, cross-examination, closing argument, or another jury instruction regarding witness credibility. *See, e.g., United States v. McCabe,* 720 F.2d 951, 957 (7th Cir. 1983) (where fact that accomplices were testifying pursuant to plea agreements was covered extensively in both direct and cross-examination, and trial court gave a general witness credibility instruction to the jury, there was "fair assurance" that the conviction was not substantially influenced by omitting the instruction); *United States v. Velez,* 652 F.2d 258, 261 n.5 (2d Cir. 1981) (where defense counsel argued lack of accomplice's credibility in his summation, omission of accomplice instruction was not prejudicial); *United States v. Abrams,* 427 F.2d 86, 90–91 (2d Cir. 1970) (where trial court gave the usual instruction regarding the credibility of witnesses, omission of special instruction on accomplice testimony did not justify reversal), *cert. denied,* 400 U.S. 832 (1970); *United States v. Cianchetti,* 315 F.2d 584, 592 (2d Cir. 1963) (failure to give accomplice instruction was not a cause for reversal where trial judge gave usual instruction as to bias of witnesses, and defense counsel made references to inconsistencies in testimony of witnesses in both closing argument and motions to the court).

the trial court level are deemed waived. *See State v. Fawcett,* 145 Wis. 2d 244, 256, 426 N.W.2d 91, 96 (Ct. App. 1988).

Nonetheless, we choose to address this issue on its merits. *See State v. Vander Linden,* 141 Wis. 2d 155, 161, 414 N.W.2d 72, 74 (Ct. App. 1987). Under Wisconsin law, a witness may not testify that another physically and mentally competent witness is telling the truth. *State v. Jensen,* 147 Wis. 2d 240, 249, 432 N.W.2d 913, 917 (1988). In *State v. Haseltine,* 120 Wis. 2d 92, 352 N.W.2d 673 (Ct. App. 1984), we held inadmissible an expert opinion that there was "no doubt whatsoever" that the complainant was an incest victim. *Id.* at 95–96, 352 N.W.2d at 675–676. In *State v. Romero,* 147 Wis. 2d 264, 432 N.W.2d 899 (1988), the supreme court held that a witness could not testify that the complainant "was being totally truthful with us." *Id.* at 277–78, 432 N.W.2d at 904–05.

The state maintains that under the rules set forth in *Haseltine* and *Romero,* the detective's testimony was not offered as, and cannot be characterized as, an expert opinion that Kentopp was being truthful about Smith's involvement in the fire. The state acknowledges, however, that such opinion evidence might well be error.

We conclude that the facts of this case support the state's position that neither the purpose nor the effect of the testimony was to attest to Kentopp's truthfulness.

First, the detective made the statement as he was explaining the circumstances of Kentopp's interrogation and the reasons for it. Kentopp initially denied any involvement in starting the fire during his post-fire interrogation. The detective obviously did not believe Kentopp's initial story; he felt that "Mr. Kentopp knew a lot more than he was telling me." The detective testified that because he did not believe the story Kentopp

718

initially gave him, he continued the interrogation until he got what he believed to be the truth. Consequently, the detective's testimony that Kentopp later changed his story to what the detective "felt was the truth" was not an attempt to bolster Kentopp's credibility, but was simply an explanation of the course of events during the interrogation.

Second, based on our review of the record and the context in which the detective made the statement, we conclude the jury would have received the same inference from the continued questioning of Kentopp and Smith's resulting prosecution based upon Kentopp's eventual admission as to his and Smith's involvement. Nor do we believe there is any risk that the jury used the detective's testimony to assess Kentopp's truthfulness, particularly when the jury was instructed that it was the sole judge of the witnesses' credibility at the trial. We presume that the jury followed the instructions given to them by the trial court. *State v. Truax,* 151 Wis. 2d 354, 362, 444 N.W.2d 432, 436 (Ct. App. 1989). Consequently, we conclude that the detective's testimony did not amount to an opinion about Kentopp's truthfulness as to his and Smith's involvement in the fire.[8]

*By the Court.*—Judgment and order affirmed.

---

[8]Because we hold that the detective's testimony was not an improper opinion as to Kentopp's truthfulness, we see no need to address Smith's related arguments for reversal based on plain error, interests of justice or ineffective assistance of counsel.