STATE of Wisconsin, Plaintiff-Respondent,††

v.

Ronald J. GERARD, Defendant-Appellant.†

Court of Appeals

*No. 93–1010–CR. Submitted on briefs October 4, 1993.—Decided November 17, 1993.*

(Also reported in 509 N.W.2d 112.)

††Petition to cross-review granted.
†Petition to review denied.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *William J. Chandek*, of Brookfield.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James E. Doyle*, attorney general, and *Stephen W. Kleinmaier*, assistant attorney general.

Before Anderson, P.J., Brown and Nettesheim, JJ.

NETTESHEIM, J.   Ronald J. Gerard appeals from an amended judgment of conviction for operating a motor vehicle without owner's consent contrary to sec. 943.23(3), Stats., and obstructing an officer contrary to sec. 946.41(1), Stats., and from an order denying his motion for postconviction relief. Gerard was charged and sentenced as a repeat offender pursuant to sec. 939.62(2), Stats.

On appeal, Gerard contends that the trial court erred by failing to order the state to reveal a confidential informant's identity. Although we agree, we also conclude that the error was of no consequence since Gerard correctly suspected who the informant was and the evidence circumstantially bore out his suspicion. Gerard also contends that the trial court improperly amended the repeater allegation regarding the obstructing charge after Gerard had pled not guilty. Again, we agree. We reverse that portion of the judgment which imposes an enhanced sentence against Gerard on the obstructing charge. We remand with directions that the sentence on the obstructing charge be modified to the maximum sentence without enhancement.

*Facts*

We begin by reciting the evidence which supports the state's theory of the case and the jury's verdict. We will then address Gerard's theory of the case and his evidence.

Janet and Henry Mieszkowski are the owners of The Car Stable, a motor vehicle dealership located in Milwaukee. On Friday, May 10, 1991, Gerard appeared at The Car Stable and told Janet that his daughter was interested in a 1986 Ford Thunderbird automobile located on the lot. Janet knew Gerard from prior contacts when Gerard had test driven cars from The Car Stable for Ronald Moench, who had previously purchased cars from The Car Stable. Gerard reminded Janet of these prior contacts. Janet gave Gerard the keys for the Thunderbird and he took the car for a test drive. Janet saw Gerard drive away from the dealership in a westerly direction towards an Ace Hardware store. About twenty minutes later, Gerard returned the car.

At about 5:30 to 6:00 p.m. the next day, Saturday, May 11, Henry and Janet noticed that the Thunderbird was missing from their lot. Henry contacted the police to report the theft. Henry also contacted Moench because he knew that Moench was acquainted with Gerard. Moench told Henry that he had not seen Gerard.

That same day at approximately 5:35 p.m., Donald Orlowski, while working at a gas station located eleven or twelve blocks from The Car Stable, saw a Thunderbird bearing The Car Stable license plates pull into the gas station. The driver asked for $3 worth of gas, explaining that he could not afford more gas because he

had just purchased the vehicle. Later, Orlowski identified Gerard to the police as the driver, and he confirmed this identification at the trial.

We now come to the evidence which concerns the appellate issue. Two days later, on Monday, May 13, Detective Philip Kiedrowski of the City of New Berlin Police Department received a telephone call from Moench, who advised that Gerard had stolen a 1986 silver Ford Thunderbird the previous weekend. Moench reported that Gerard had accomplished the theft by making a duplicate set of keys while test driving the vehicle. Moench further reported that Gerard was presently driving the Thunderbird to the Maaco Paint Shop in New Berlin, a route that would take him southbound on Moorland Road from Greenfield Avenue. Finally, Moench told Detective Kiedrowski that he knew Gerard and he provided Kiedrowski with a physical description of Gerard.

Kiedrowski testified about this telephone call at the jury trial. However, pursuant to the trial court's rulings both before and during the trial, Kiedrowski was not permitted to testify that Moench was the person who placed the call. In these rulings, the court upheld the state's invocation of its privilege not to disclose the identity of a confidential informant pursuant to sec. 905.10, Stats. We freely discuss Moench's role as the confidential informant in this opinion because the state conceded in the postconviction proceedings that Moench was, in fact, the confidential informant.

Based upon the information provided by Moench, Corporal Robert Osborn of the New Berlin police department encountered the Thunderbird as it was traveling southbound on Moorland Road. Osborn followed the vehicle in his unmarked squad car, noticing that it was traveling slowly. The Thunderbird then

pulled over to the shoulder and, as Osborn passed, the driver of the Thunderbird waved to Osborn as if he wanted to talk.

Osborn also stopped his vehicle. Before speaking to the driver of the Thunderbird, Osborn ran a record check on the license plates displayed on the Thunderbird. The record check revealed that the plates were assigned to a Mercury automobile registered to a Thomas Hayden. The record check also revealed that the registration was suspended and that Hayden owed an unpaid fine.

Osborn approached the driver of the Thunderbird and asked for identification. The driver responded that he did not have any identification on him but verbally identified himself as Hayden, misspelling the name "H-a-y-d-i-n" and then correcting it to "H-a-y-d-e-n." Under further questioning by Osborn, the driver stated that he was born in 1957. When Osborn challenged this answer in light of the driver's appearance, the driver stated he was born in 1947. The driver also said that he had just purchased the Thunderbird and that he was not aware that the plates were assigned to a Mercury automobile.

Osborn then arrested the driver for obstructing an officer.[1] After the arrest, the driver told Osborn that Hayden had given him the car and that he did not know it was stolen. At trial, Osborn identified Gerard as the driver of the Thunderbird.

The Ace Hardware store located west of The Car Stable makes duplicate keys for motor vehicles. An employee of the store testified that the Thunderbird keys found on Gerard's person were made from Ace Hardware blanks. However, the employee could not

---

[1] Osborn also arrested the driver (assuming that he was Hayden) for the unpaid fine and the registration violation.

testify that the keys were actually cut at the Ace Hardware store near The Car Stable. Nor could the employee identify Gerard as having been in the store.

We now turn to Gerard's theory of the case and his supporting evidence. Gerard contended that Moench stole the Thunderbird and that Moench "set up" Gerard in his telephone call to Kiedrowski. Gerard testified that Henry Mieszkowski suspected Moench—not Gerard—of the theft and that Mieszkowski confronted Moench with this suspicion. Gerard testified that Moench, fearful that Mieszkowski would implicate him, telephoned the New Berlin police department to falsely implicate Gerard.

### Trial Court Proceedings and Rulings

Before the trial, Gerard attempted to locate Moench so that he could subpoena him as a witness. At one of the pretrial hearings, the state provided Gerard with its last known information regarding Moench's whereabouts. However, Moench could not be found and he was unavailable for trial.

Suspecting that Moench was the confidential informant, Gerard asked the trial court by pretrial motion to compel the state to divulge the identify of the person who placed the telephone call to Kiedrowski. In support, Gerard explained his theory of defense which implicated Moench. The state invoked its privilege under sec. 905.10, Stats., although, as we have noted, the state did provide Gerard with an address at which Moench had at one time lived. The trial court denied Gerard's request that the state identify Moench as the informant. The court ruled that Gerard had not made the requisite showing that "an informer may be able to give testimony necessary to a fair determination of the

333

issue of guilt or innocence" pursuant to sec. 905.10(3)(b).

At trial, Gerard continued to press for this information. Midtrial, as Gerard's counsel was cross-examining Kiedrowski on matters pertaining to Moench, the trial court decided to revisit this issue. The court decided to conduct an *in camera* proceeding under sec. 905.10, Stats. At this proceeding, Kiedrowski testified that Moench was, in fact, the informant. The balance of Kiedrowski's *in camera* testimony essentially repeated what he had already testified to before the jury in open court.

After hearing Kiedrowski's *in camera* testimony, the trial court confirmed its prior ruling that Moench's identity should not be revealed. In support of its ruling, the court noted that Moench was not present when Osborn stopped Gerard and that Moench's involvement was limited to the telephone call he placed to Kiedrowski. On postconviction motion, the court confirmed this ruling. Gerard appeals.

### *Analysis*

We begin with the statute. Section 905.10(3)(b), Stats., states, in relevant part:

> *Testimony on merits.* If it appears from the evidence in the case or from other showing by a party that an informer may be able to give testimony necessary to a fair determination of the issue of guilt or innocence in a criminal case ... and the ... state ... invokes the privilege, the judge shall give the ... state ... an opportunity to show in camera facts relevant to determining whether the informer can, in fact, supply that testimony.... If the judge finds that there is a reasonable probability that the informer can give the testimony, and the ... state

. . . elects not to disclose the informer's identity, the judge on motion of the defendant . . . shall dismiss the charges to which the testimony would relate. . . .

The parties bring this case to us under this statute. However, we note as a preliminary matter that while the statute lays out a scheme by which the defendant may learn the identity of an informant, the statute's ultimate evidentiary goal appears to be the actual *testimony* of the informant at trial, not the mere identification of the informant by another witness. Here, Gerard sought only to put before the jury that Moench was the informant. He did not seek to put Moench's actual testimony before the jury because Moench was unavailable for trial. Thus, we do not answer with finality in this case whether the statute applies to such a situation. Instead, we adopt the parties' assumption that it does and we decide this case on that basis.[2] We now turn to the issue.

At the jury trial, Gerard sought to cross-examine Kiedrowski about any prior dealing with Moench and whether Moench had any criminal record. Although the trial court sustained the state's objections to these questions, it appears that these questions and the other evidence already presented prompted the court to revisit the identity issue. Although the trial court did not expressly say so, it appears that the court was now satisfied that Gerard had made the requisite preliminary showing that the informant "[might] be able to give testimony necessary to a fair determination of the

[2] The parties' assumption that the statute applies may well be valid. If the circumstances of a case show the need for the informant's testimony and the informant testifies, the jury will obviously learn the informant's identity. But if the informant is unavailable, we are hard pressed to imagine why, at a minimum, the informant's identity should not be revealed.

issue of guilt or innocence," sec. 905.10(3)(b), Stats., such that the court should conduct an *in camera* proceeding.[3]

We agree with the trial court's implicit finding. The threshold showing under the statute "does not place a significant burden upon the party seeking disclosure." *State v. Outlaw*, 108 Wis. 2d 112, 125, 321 N.W.2d 145, 153 (1982). "There need only be a showing . . . that an informer may be able to give testimony necessary' to a fair trial." *Id.* (quoting sec. 905.10(3)(b), Stats.). The test for the necessity of the testimony is whether it " 'could have created in the minds of the jurors a reasonable doubt' " of the defendant's guilt. *Id.* at 140, 321 N.W.2d at 160 (Callow, J., concurring) (4-3 decision) (quoting *United States v. Eddings*, 478 F.2d 67, 72 (6th Cir 1973). *Accord State v. Dowe*, 120 Wis. 2d 192, 194-95, 352 N.W.2d 660, 662 (1984) (*per curiam*) (holding that the concurring opinions in *Outlaw* stated the law on the test to be applied to determine the necessity of the testimony).

At both the pretrial proceedings and during trial, Gerard laid out his theory of defense that Moench was the thief and that he "set up" Gerard in an effort to deflect Henry Mieszkowski's belief that Moench had stolen the Thunderbird. The evidence available to the trial court at the time it revisited the issue during trial established that this theory was not made out of whole cloth: Gerard had previously test driven cars from The Car Stable for Moench; Henry Mieszkowski had sought

---

[3] Later, at the postconviction proceedings, the trial court candidly stated that it had erred in its earlier ruling that Gerard had not made the minimal threshold showing under the statute and by not conducting the *in camera* proceeding prior to trial.

336

out Moench upon discovering the theft; and, most importantly, Moench (assuming he was the informant) had provided Kiedrowski with an array of accurate facts regarding the theft and Gerard's ensuing travels with the stolen car.

Thus, the trial court properly moved to the next level of proceedings pursuant to sec. 905.10(3)(b), Stats., an *in camera* hearing. The purpose of this proceeding is to allow the state an opportunity to present "facts relevant to determining whether the informer can, in fact, supply that testimony." Section 905.10(3)(b). In short, the court learns what the informer can actually testify about. *Outlaw*, 108 Wis. 2d at 126, 321 N.W.2d at 153.

At this hearing, Kiedrowski confirmed that Moench was the confidential informant. This evidence was consistent with Gerard's theory of defense and consistent with the evidence developed to that point in the trial.[4] Nonetheless, the trial court upheld the state's invocation of the privilege after the *in camera* proceeding. In support, the court noted that Moench was not present when Osborn stopped Gerard and that Moench's involvement was limited to his placement of the telephone call to Kiedrowski. We conclude that this ruling was error.

*United States v. Partyka*, 544 F.2d 345 (8th Cir. 1976), *cert. denied*, 434 U.S. 1037 (1978), is somewhat like this case. There, the confidential informant did not appear at the trial, although he was not unavailable. The defense sought to introduce the informant's identity through the testimony of a law enforcement officer. The trial court upheld the government's invocation of the privilege.

---

[4] It also was consistent with Gerard's later testimony.

The court of appeals addressed the issue on two levels. To the extent that the defendant was seeking to *learn or confirm* the informant's identity in order to locate the informant, the court upheld the trial court's ruling because "[t]he appellant knew the identity of the witness, Faircloth, and had decided not to call him." *Id.* at 346. However, to the extent that the defendant was seeking to put the informant's identity before the jury, the court reversed the trial court's ruling, stating:

> In light of the defendant's claim and defense that someone else may have put the drugs in the trunk of his car, and the implication that this "someone" was Faircloth, it was relevant to know whether Faircloth had participated in any arrangements of any kind with the Government regarding this prosecution. The purpose of the question was not to find a witness, but to support the defendant's inference that Faircloth, in addition to using the car, might have had a motive to give a false report to government agents in order to obtain more lenient treatment in connection with a narcotics prosecution pending against Faircloth.[5]

*Id.* at 346-47.

---

[5] We acknowledge that although the federal rules recognize the right of the prosecution to invoke the confidential informant privilege, *see* FED. R. EVID. 501, the rules do not specifically include the procedural apparatus set out in sec. 905.10(3)(b), Stats. Nonetheless, the federal rules also recognize the common law in this area, which includes the balancing test which underpins sec. 905.10. *See State v. Midell*, 40 Wis. 2d 516, 523, 162 N.W.2d 54, 57 (1968) (citing *Roviaro v. United States*, 353 U.S. 53 (1957), the leading decision in this area); FED. R. EVID. 501. Thus, we conclude that *United States v. Partyka*, 544 F.2d 345 (8th Cir. 1976), *cert. denied*, 434 U.S. 1037 (1978), is relevant to our discussion.

Here, like the defendant in *Partyka*, Gerard was seeking to put Moench's role as the confidential informant before the jury. This evidence would have supported Gerard's "set up" theory of defense. We conclude that the trial court erred in not permitting the jury to hear this evidence.

We disagree with the trial court's holding that Moench's presence at the scene of the arrest was necessary before the court could order Moench's identity revealed. Gerard's theory of defense did not contemplate or require that Moench be placed at the scene of Gerard's arrest. In fact, Moench's absence at the arrest scene supported, rather than countered, Gerard's "set up" theory. We have previously stated, albeit in dicta, that an informant need not necessarily be a "transactional witness." *State v. Hargrove*, 159 Wis. 2d 69, 76 n.1, 464 N.W.2d 14, 17 (Ct. App. 1990).

Despite our conclusion that the trial court erred, we also conclude that the error was harmless because the evidence circumstantially established that Moench was the informer. We begin this discussion by recognizing the admonition of our supreme court in *Outlaw* that we are not to usurp the function of the jury in this area. *Outlaw*, 108 Wis. 2d at 132-33, 321 N.W.2d at 156-57. We may not weigh the evidence nor hypothecate or speculate as to what its effect on the case would have been. *See id.* at 133, 321 N.W.2d at 156-57.

However, this is not a case where the withheld evidence would have revealed anything substantively new to the jury. Gerard correctly suspected from the very start that Moench was the informant. He told the jury so in his opening statement. In his cross-examination of Henry Mieszkowski, Gerard established that Mieszkowski believed that the New Berlin police learned of Gerard's travels on the day of the arrest from

Moench. On redirect examination of Mieszkowski, the state itself established that Moench told Mieszkowski that Moench had called the New Berlin police department.

In his own testimony, Gerard testified at length about his theory of the case. He testified that Moench was the thief, that Moench had "set him up," and, most importantly, that Moench was the informer. Moreover, the trial court accorded Gerard substantial leeway in this testimony, even permitting Gerard to state why he believed Moench "set him up" and why he believed Moench was the confidential informant. Finally, in his closing argument to the jury, Gerard's counsel again urged Gerard's theory of defense and cited to the evidence supporting it. And, although the state's rebuttal argument challenged Gerard's contention that Moench was the thief and the "set up man," the state never challenged Gerard's contention that Moench was the informant.

Our reading of the entire record convinces us that although the jury was not expressly told that Moench was the informant, a reasonable jury could draw but one obvious and indisputable conclusion. The state's effort to conceal Moench's identity as the confidential informant in this case was not only inept but also a failure. We hold that the trial court's error was harmless. And, in making this conclusion, we again state that we do not run afoul of *Outlaw* since we are evaluating evidence which would only have corroborated what any reasonable jury would have already deduced from the evidence it actually heard.

Next, Gerard argues that the trial court erred by not requiring the personal testimony of Moench him-

self at the *in camera* hearing. The statute states in relevant part:

> [T]he judge shall give the . . . state . . . an opportunity to show in camera facts relevant to determining whether the informer can, in fact, supply that testimony. The showing will ordinarily be in the form of affidavits but the judge may direct that testimony be taken if the judge finds that the matter cannot be resolved satisfactorily upon affidavit.

Section 905.10(3)(b), Stats.

The statute does not expressly require that the informant testify at this proceeding. Nor does the statute expressly say that the informant must be the affiant where affidavits constitute the proofs. In support of his argument, Gerard points to cases where the informant did provide the *in camera* testimony. *See Outlaw*, 108 Wis. 2d at 119, 321 N.W.2d at 150. However, the issue raised by Gerard was not the issue in those cases. Nor do the cases cited by Gerard hold that the statute requires the actual testimony of the informant at the *in camera* hearing.

■

Moreover, although Gerard raised this issue in his postconviction proceedings, he never objected to the trial court hearing only Kiedrowski's testimony at the time of the *in camera* proceeding. Nor did Gerard ask that the trial court take the informant's testimony when the court went into the *in camera* session. On this alternative ground, we hold the issue waived. *See State v. Smith*, 170 Wis. 2d 701, 717-18, 490 N.W.2d 40, 47 (Ct. App. 1992), *cert. denied*, 113 S.Ct. 1860 (1993) (alleged errors not objected to at the trial court level are deemed waived).

## THE REPEATER ALLEGATIONS

Gerard argues that the trial court improperly allowed the state to amend the repeater allegation on the obstructing an officer charge after he had entered his not guilty pleas. Following his conviction, Gerard was sentenced as a habitual criminal.[6]

In the second count of the information, the state charged Gerard with obstructing an officer. Relying on a prior conviction for second-degree murder, the state alleged that Gerard was a habitual criminal pursuant to sec. 939.62(1)(b), Stats. However, the information incorrectly stated that Gerard was subject to an additional six years imprisonment. Actually, pursuant to sec. 939.62(1)(a), Gerard was subject to an additional three years imprisonment. Gerard pled not guilty to the charges.

Thereafter, Gerard asked the trial court to strike the repeater allegation relating to the obstructing charge, citing sec. 973.12(1), Stats., which requires that a penalty enhancer must be alleged prior to any plea. The state responded with a request to amend the repeater provision to allege the correct penalty enhancer. Gerard objected, citing case law from both the supreme court and the court of appeals which disapproved of such post-plea amendments.

The trial court denied Gerard's request to strike the penalty enhancement allegation and granted the state's request to amend the allegation. The court held

---

[6] Gerard received concurrent prison sentences on both the operating motor vehicle without owner's consent conviction and the obstructing an officer conviction. The state does not contend that the concurrent sentences render Gerard's appellate issue on the lesser sentence moot. We agree because the sentence, although concurrent, could bear upon Gerard's eligibility for parole.

that its ruling did not violate the statute or the case law because: (1) the amendment pertained to an allegation timely alleged, not to any new or additional repeater allegation; (2) the incorrect recital of the enhancement penalty was due to a scrivener's error; and (3) the misstatement did not prejudice Gerard because it overstated rather than understated the possible penalty.

In the consolidated cases of *State v. Martin/Robles*, 162 Wis. 2d 883, 470 N.W.2d 900 (1991), the state amended the information to allege penalty enhancers after each defendant had pled not guilty. *Id.* at 888-90, 470 N.W.2d at 901-03. The supreme court concluded that the amendments were barred by sec. 973.12(1), Stats. The court stated that "the legislature has established the time of arraignment and of *any* plea acceptance as the cut-off point after which time a defendant can no longer face exposure to repeater enhancement for the crime set forth in the charging document and pleaded to by the defendant at arraignment." *Id.* at 900, 470 N.W.2d at 907 (footnote omitted). The court also stated that "proof of prejudice is an irrelevant consideration under sec. 973.12(1), Stats." *Id.* at 902, 470 N.W.2d at 908.

The state argues that "the holding in *Martin/Robles* is that the defendant is entitled to know of his repeater status by the deadline imposed in sec. 973.12." Since the obstructing charge included a repeater allegation, albeit incorrect, the state argues that Gerard knew of his repeater status when he pled and that the holding of *Martin/Robles* is satisfied. The state badly misstates the holding of *Martin/Robles*. The supreme court did not say that the defendant is entitled to know of his repeater status. Rather, the supreme court said, "When the defendant is asked to

plead, *he is entitled to know the extent of his punishment of the alleged crime." Id.* at 901, 470 N.W.2d at 907 (emphasis altered).

We echoed this same theme in the later case of *State v. Wilks,* 165 Wis. 2d 102, 477 N.W.2d 632 (Ct. App. 1991). There, the state timely alleged a repeater offense prior to the defendant's no contest plea. However, when making his plea, the defendant denied that he had committed the offense as alleged in the repeater allegation. Later, the state learned that the defendant had not committed the alleged repeater offense on the date alleged. The state asked the trial court to allow an amendment to the repeater allegation to allege a different date. The trial court agreed.

Relying on the supreme court's language in *Martin/Robles,* we reversed the trial court's ruling in *Wilks.* We said that the supreme court's language in *Martin/Robles* barred post-plea repeater amendments *"which meaningfully change the basis upon which the defendant assessed the extent of possible punishment at the time of plea." Wilks,* 165 Wis. 2d at 111, 477 N.W.2d at 636 (emphasis added). The state claims that our language reads *Martin/Robles* too broadly. We disagree. At the heart of both the supreme court's statement in *Martin/Robles* and this court's statement in *Wilks* is the principle that a defendant is entitled to know and meaningfully assess the extent of punishment at the time of plea. Later amendments which change the understanding upon which the plea is entered are not permitted. We reject the state's argument that *Wilks* represents a broadening of *Martin/Robles.* To the contrary, we see the two cases as standing for the same principle.

Thus, we disagree with the trial court's reasoning which permitted the post-plea amendment because the

amendment pertained to a repeater allegation already made, because the incorrect allegation was due to a scrivener's error, and because the error overstated Gerard's exposure on the obstructing charge. Functionally, the court was holding that Gerard was not prejudiced. But the supreme court in *Martin/Robles* expressly said that "proof of prejudice is an irrelevant consideration under sec. 973.12(1), Stats." *Martin/Robles*, 162 Wis. 2d at 902, 470 N.W.2d at 908.

Rather, the test is whether the defendant has been correctly advised of the possible penalty and, if not, whether the corrected information meaningfully changes the basis upon which the defendant assessed his exposure and entered his plea. In *Wilks*, we noted an example of a permissible post-plea repeater amendment which would not constitute a meaningful change to the basis upon which the defendant's plea was entered. The repeater allegation in *Wilks* cited to the wrong subsection of sec. 939.62, Stats. We opined that an amendment to the correct subsection would not violate the statute. *Wilks*, 165 Wis. 2d at 112, 477 N.W.2d at 636-37.

We acknowledge that it is impossible in most cases to say for certain that a defendant's plea would have been any different if the penalty enhancer had been correctly alleged. However, this may be why the statute places the onus squarely on the state to assure that penalty enhancers are correctly and timely alleged and why the supreme court has said that prejudice is an irrelevant consideration when a post-plea amendment to a repeater allegation is requested by the state. In light of this bright line rule, prosecutors must be careful to correctly and timely charge penalty enhancer allegations.

345

We do note, however, that the law does not leave the state totally powerless in this area. The statute allows the state an opportunity to obtain an adjournment of the arraignment in order to investigate a defendant's prior convictions so that a penalty enhancer can be correctly and timely alleged. In addition, as we have noted, *Wilks* permits post-plea amendments that do not meaningfully change the basis upon which a plea is entered.

Moreover, we recently held in *State v. Larsen*, 177 Wis. 2d 835, 503 N.W.2d 359 (Ct. App. 1993), that the state may seek a post-plea dismissal without prejudice so that it may issue a new complaint with a correct penalty enhancer allegation. *Id*. at 841, 503 N.W.2d at 362-63. However, the state did not pursue this option at the early stage of these proceedings when Gerard raised this defect shortly after he pled not guilty to the charges set out in the information.

We acknowledge that the statute and the case law set out hard and fast rules in this area. However, if the state believes that the statute works too rigidly against post-plea amendments to penalty enhancer allegations, the state should address its concerns to the legislature.

We therefore reverse that portion of the amended judgment of conviction which imposed an enhanced penalty against Gerard on count two, obstructing an officer, contrary to sec. 946.41(1), Stats. On remand, we direct the court to enter a further amended judgment imposing the maximum sentence for that conviction without any enhanced penalty. All other provisions of the amended judgment of conviction are affirmed.

*By the Court.*—Judgment and order affirmed in part; reversed in part and cause remanded with directions.