COURT OF APPEALS
DECISION
DATED AND FILED

August 16, 2022

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

**This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.**

**A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals.** *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.     **2019AP2145-CR**

Cir. Ct. No. 2016CF4456

**STATE OF WISCONSIN**

**IN COURT OF APPEALS DISTRICT I**

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

DENNIS J. BROOKSHIRE,

DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Milwaukee County:  MARK A. SANDERS and STEPHANIE ROTHSTEIN, Judges. *Affirmed*.

Before Brash, C.J., Donald, P.J., and Dugan, J.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1      PER CURIAM. Dennis J. Brookshire appeals a judgment of conviction entered after a jury found him guilty of first-degree intentional homicide, two counts of first-degree recklessly endangering safety, and felony bail jumping.   He also appeals an order denying his postconviction motion.[1] Brookshire argues that his trial counsel was ineffective for two reasons: (1) for failing to object to out-of-court identifications of him that he contends were the result of impermissibly suggestive procedures; and (2) for not objecting to testimony that he contends constituted an impermissible opinion on other witnesses' credibility.   We reject Brookshire's ineffective assistance claims and affirm.

## I. BACKGROUND

¶2      The charges against Brookshire stemmed from an incident that occurred on August 29, 2016.  The complaint alleged that on that date, L.R. was part of a funeral procession.  L.R.'s two cousins, JuL and JoL, were riding in L.R.'s car with him.[2]   Brookshire and another individual drove a white SUV through the procession and pulled up next to L.R.'s vehicle.  Brookshire, who was in the passenger seat, produced a gun and began shooting at L.R., JuL, and JoL. L.R. was shot multiple times and died as a result.  JuL and JoL both suffered gunshot wounds but survived.   At the time of the incident, Brookshire was released on bail for drug charges.

---

[1] The Honorable Mark A. Sanders entered the judgment of conviction in this matter.  The Honorable Stephanie Rothstein issued the decision and order denying Brookshire's postconviction motion.

[2] We refer to the witnesses and the victims using the same initials as those used by the parties.

¶3     The case proceeded to a jury trial.  The following is some of the evidence that was presented.  JuL testified about riding in L.R.'s car with L.R. and JoL during the funeral procession.  JuL testified that a white SUV pulled up alongside L.R.'s car.  He said that he recognized Brookshire as the front seat passenger in the SUV because he had seen Brookshire before.  According to JuL, Brookshire said one sentence but JuL did not hear what he said.  Brookshire then opened fire on L.R.'s vehicle.  JuL testified that he, JoL, and L.R. all tried to duck. JuL was shot in the arm but lived.

¶4     At the hospital, JuL described the shooter as a skinny black male, aged twenty-five or twenty-six, with a light complexion, afro, and a six-piece gold grill.  On September 25, 2016, nearly one month after the shooting, JuL identified Brookshire from a six-person photo array.  This was the only time he was shown a photo of Brookshire, and at the time of the identification, JuL indicated that he was "1,000 percent certain[.]"  He also identified Brookshire in court.[3]

¶5     JoL, the other surviving victim, testified that he was riding in the funeral procession in the front passenger seat of L.R.'s vehicle.  He testified that a white SUV drove up next to them.  According to JoL, Brookshire stuck his head out of the SUV and asked L.R. something along the lines of, "Are you ready to die?"  Brookshire then opened fire.  JoL testified that he saw that L.R. was shot in the head.  After JoL got out of the car, he realized he was shot in the leg.  JoL was hospitalized but survived.

---

[3] JuL's identification of Brookshire is not at issue on appeal.

¶6     JoL testified that initially he was in a state of shock and told an officer on the way to the hospital that he could not give a good description of the vehicle or the shooter.  At the hospital, however, JoL told police that the vehicle was a newer white SUV.  He also described the shooter as an African American male, twenty-one or twenty-two years old, "thin build, light complexion," with a short afro.

¶7     JoL attended a live police lineup on September 30, 2016.  He identified Brookshire as the shooter and stated that seeing Brookshire in the lineup caused him to have flashbacks to the shooting.  He testified that the police instructed him not to talk to JuL about potential witnesses or suspects, that he complied with this order, and that JuL never talked to him about identifying the shooter.  JoL also identified Brookshire as the shooter in court.  A detective who spoke to JoL following the live lineup testified that JoL said he was "positive" of his identification and explained, "I wouldn't forget that face for nothing.  It haunts me."

¶8     K.W., a citizen witness who was not part of the funeral procession, testified that while walking in the area on the day of the incident, she heard gunshots.  As she walked toward the direction of the gunshots, she said she was almost run over by what she described as a "white mid-sized truck, van" or "white SUV-type vehicle."  K.W. testified that she did not see the shooting and could not identify the shooter.

¶9     Approximately ten to fifteen minutes after dodging the white SUV, K.W. said that she saw a man talking on a cell phone and heard him say, "I'm here.  It's done."  She identified Brookshire in court as the man she saw talking on

the phone. K.W. testified that she told a detective at the crime scene about what she heard Brookshire say.

¶10 K.W. testified that a couple of days after the incident, detectives showed her small photographs. She testified that they were "little, bitty" pictures and that she did not remember if one of them was Brookshire. During his trial testimony, Detective Timothy Graham explained that he showed K.W. two small photographs: one of Brookshire and one of another individual. He additionally testified that K.W. said one of the photos looked like it might be the driver of the SUV and the person who was talking on a cell phone at the scene.

¶11 On October 1, 2016, more than a month later, police presented K.W. with a six-photo array. She identified Brookshire from the photo array as the person she saw talking on the phone, and potentially driving the white SUV that nearly struck her.

¶12 During trial, the jury saw a video of an African American man getting out of a vehicle and talking on the phone. Detective Terrence Wright testified that the vehicle and the man on the phone in the video appeared consistent with K.W.'s description of what she witnessed after the shooting.

¶13 Officer Luke Ardis testified that on the day of the shooting, he responded to a call to find a white SUV that had been set on fire in a vacant lot. M.B., who lived next to the vacant lot, testified that on the day of the shooting, he came home to find a dark grey car blocking his driveway. The car was near a white SUV, which was parked in the vacant lot. M.B. watched an African American man grab something from the passenger side of the car that was blocking his driveway and throw it into the white SUV. According to M.B.,

within three seconds, the white SUV "burst in flames." The man then got into the passenger's seat of the car that was blocking the driveway and the car took off.

¶14 Police subsequently located the car that was blocking M.B.'s driveway, a Hyundai Genesis. Brookshire's fingerprints were found on the car and on items recovered from inside of it.

¶15 The jury found Brookshire guilty of all of the charges. He filed a postconviction motion arguing that his trial counsel was ineffective. The circuit court denied the motion without a hearing, and this appeal follows.

## II. DISCUSSION

¶16 Brookshire continues to argue that his trial counsel was ineffective. Our analysis of his claims involves the familiar two-pronged test: the defendant must show that his trial counsel's performance was deficient and that the deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "To prove constitutional deficiency, the defendant must establish that counsel's conduct falls below an objective standard of reasonableness." *State v. Love*, 2005 WI 116, ¶30, 284 Wis. 2d 111, 700 N.W.2d 62. "To prove constitutional prejudice, the defendant must show that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Id.* (citations and one set of quotation marks omitted).

¶17 The court "need not address both components of this inquiry if the defendant does not make a sufficient showing on one." *State v. Smith*, 2003 WI App 234, ¶15, 268 Wis. 2d 138, 671 N.W.2d 854. "The ultimate determination of

whether counsel's performance was deficient and prejudicial to the defense are questions of law which this court reviews independently." *State v. Johnson*, 153 Wis. 2d 121, 128, 449 N.W.2d 845 (1990).

¶18     Brookshire seeks a *Machner* hearing for his ineffective assistance of counsel claim.[4]  *See State v. Machner*, 92 Wis. 2d 797, 804, 285 N.W.2d 905 (Ct. App. 1979).  However, a defendant is not automatically entitled to an evidentiary hearing relating to his or her postconviction motion.  *State v. Bentley*, 201 Wis. 2d 303, 310-11, 548 N.W.2d 50 (1996).  Rather, the circuit court is required to hold an evidentiary hearing only if the defendant has alleged "sufficient material facts that, if true, would entitle the defendant to relief."  *State v. Allen*, 2004 WI 106, ¶14, 274 Wis. 2d 568, 682 N.W.2d 433.  If, on the other hand, the postconviction motion "does not raise facts sufficient to entitle the movant to relief, or presents only conclusory allegations, or if the record conclusively demonstrates that the defendant is not entitled to relief," the circuit court, in its discretion, may either grant or deny a hearing.  *Id.*, ¶9.

### (1) *Trial counsel was not ineffective for not challenging K.W.'s and JoL's out-of-court identifications.*

¶19     Brookshire argues that trial counsel was ineffective for failing to challenge K.W.'s and JoL's out-of-court identifications of him.[5]  He contends that K.W.'s out-of-court identification was unduly suggestive because she was shown a

---

[4] Brookshire additionally seeks a new trial.  However, a new trial is not appropriate on an ineffective-assistance claim until a *Machner* hearing has occurred.  *See State v. Curtis*, 218 Wis. 2d 550, 554, 582 N.W.2d 409 (Ct. App. 1998).

[5] We decline the State's invitation to apply the forfeiture rule to Brookshire's argument regarding JoL's out-of-court identification.  Instead, like the postconviction court, we opt to address this claim.

photo of Brookshire prior to the identification. He contends that "[t]here can be no question that the photograph may have influenced her identification and likely led to … K[.]W[.]'s identification of Brookshire." Brookshire additionally argues that K.W.'s identification is not reliable because she was not at the scene of the crime when the shooting occurred and had only a limited opportunity to view the individual who was in the white SUV.

¶20 As for JoL's identification, Brookshire asserts that suggestiveness arose because "it appears that during the live lineup involving JoL, Brookshire was the only individual in the live lineup with gold teeth." Brookshire acknowledges that "[t]he record at trial lacks any information as to whether or not Brookshire's gold teeth were a factor in [JoL]'s indication of Brookshire." He nevertheless contends that the fact that Brookshire "*may have been*" the only individual with gold teeth during the live lineup, in addition to being one of the individuals with tattoos, results in the conclusion that the live lineup was impermissibly suggestive. (Emphasis added.)

¶21 To resolve this issue, we turn directly to the prejudice prong of the ineffective assistance analysis. Even if we accept Brookshire's proposition that that the out-of-court identifications by K.W. and JoL were unduly suggestive, we conclude he was not prejudiced by trial counsel's failure to challenge the identification evidence. As summed up by the State and supported by the record:

> [T]he evidence of Brookshire's guilt was overwhelming even in the absence of K[.]W[.] and JoL's identifications. Several witnesses testified that they saw a white SUV drive up next to L[.]R[.]'s vehicle and then heard gunshots. JuL saw the shooter from only a few feet away, and accurately described the [sic] him in great detail: a young, thin, black male with an afro, a light complexion, and a 6-piece gold grill. He later identified Brookshire from a six-photo array with "1,000 percent" certainty. The jury saw a video of the

> white SUV speeding away from the scene after the shooting.
>
> … The jury [also] saw a video of a man setting the SUV on fire and escaping in the Hyundai, as well as photographs of the burned SUV. The Hyundai was tracked down and recovered that same day, and Brookshire's fingerprints were found in four different places in and on the Hyundai.

(Record citations omitted.)

¶22    In light of the overwhelming eyewitness, video, and forensic evidence of Brookshire's guilt, he has not met his burden of showing a reasonable probability that, but for trial counsel's failure to seek suppression of K.W. or JoL's identifications, the result of the proceeding would have been different. *See Strickland*, 466 U.S. at 694.

**(2) *Trial counsel was not ineffective for not objecting to Police Officer Ardis's testimony*.**

¶23    Next, Brookshire argues that trial counsel was ineffective for failing to object to a statement that he contends vouched for the credibility of complaining witnesses. This claim hinges on a single statement by Police Officer Luke Ardis during trial.

¶24    The prosecutor asked Officer Ardis: "Okay. Additionally, Officer, this type of vehicle or vehicle matching the description was potentially believed to have been maybe used in a homicide just earlier that same day. Is that correct?" Officer Ardis responded: "That's what I was told." According to Brookshire, this statement constituted improper vouching for the credibility of every witness who said a white SUV was involved in the homicide.

¶25 Once again, even if we conclude, for purposes of resolving this appeal, that Officer Ardis's testimony was improper, Brookshire cannot prove prejudice. In his postconviction motion, he offered only the following conclusory allegation regarding Officer Ardis's answer: "This questioning was improper and unfairly prejudiced Brookshire." This was wholly inadequate to warrant a hearing. *See Allen*, 274 Wis. 2d 568, ¶¶9, 27 (presenting only conclusory allegations is insufficient, and on appeal, "we … review only the allegations contained in the four corners of [the] postconviction motion"). Moreover, Officer Ardis's response was not an opinion on any witness's truthfulness but rather a statement of fact supported by not only the testimony of other witnesses, but by video evidence. *See State v. Smith*, 170 Wis. 2d 701, 718, 490 N.W.2d 40 (Ct. App. 1992) (concluding that a witness's testimony does not amount to an opinion about another witness's truthfulness if "neither the purpose nor effect of the testimony was to attest to [the witness's] truthfulness").

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.