# 2022 WI APP 25

## COURT OF APPEALS OF WISCONSIN
## PUBLISHED OPINION

Case No.:    2021AP943

†Petition for Review filed

Complete Title of Case:

**STATE OF WISCONSIN,**

    **PLAINTIFF-RESPONDENT,**

    **V.**

**HAJJI Y. MCREYNOLDS,**

    **DEFENDANT-APPELLANT.†**

| | |
|---|---|
| Opinion Filed: | April 12, 2022 |
| Submitted on Briefs: | January 11, 2022 |

| | |
|---|---|
| JUDGES: | Stark, P.J., Hruz and Gill, JJ. |
|    Concurred: | |
|    Dissented: | |

| | |
|---|---|
| Appellant<br>ATTORNEYS: | On behalf of the defendant-appellant, the cause was submitted on the briefs of *Colleen Marion*, assistant state public defender, Madison. |
| Respondent<br>ATTORNEYS: | On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Kiernan M. O'Day*, assistant attorney general and *Joshua L. Kaul*, attorney general. |

# COURT OF APPEALS
# DECISION
# DATED AND FILED

## April 12, 2022

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2021AP943-CR**

Cir. Ct. No. **2014CF872**

STATE OF WISCONSIN

IN COURT OF APPEALS

---

STATE OF WISCONSIN,

   PLAINTIFF-RESPONDENT,

 V.

HAJJI Y. MCREYNOLDS,

   DEFENDANT-APPELLANT.

---

APPEAL from a judgment and an order of the circuit court for Eau Claire County: WILLIAM M. GABLER, SR. and EMILY M. LONG, Judges. *Affirmed*.

Before Stark, P.J., Hruz and Gill, JJ.

¶1 STARK, P.J. Hajji Y. McReynolds appeals from a judgment, entered after a jury trial, convicting him of two counts of delivery of a controlled

substance and from an order denying his postconviction motion.[1] McReynolds claims multiple errors, both at trial and at sentencing. He argues that his trial counsel provided constitutionally ineffective assistance by failing to object to both inadmissible vouching evidence provided by the investigating officer as well as the State's elicitation of improper character evidence concerning McReynolds' alleged affiliation with the Vice Lord gang. McReynolds also claims that WIS. STAT. § 973.017(10m)(b) (2019-20),[2] is unconstitutional as applied to him. Specifically, he argues that he was denied his constitutional rights to a public trial and to be present at sentencing when, after the sentencing court imposed his sentences, it failed to state in open court the reasons for the sentences imposed and instead filed a written statement of the reasons for its sentencing decision.

¶2     We conclude that the investigating officer's trial testimony regarding the truthfulness of information provided by the confidential informant during the investigation did not constitute impermissible vouching testimony in violation of *State v. Haseltine*, 120 Wis. 2d 92, 352 N.W.2d 673 (Ct. App. 1984). McReynolds' trial counsel, therefore, did not perform deficiently by failing to object to that testimony. We further conclude that McReynolds was not prejudiced by his counsel's failure to object to the admission of improper character evidence pertaining to his alleged gang affiliation.

¶3     As to McReynolds' as-applied constitutional claims, we first determine he forfeited his claim that his right to a public trial was violated when the

---

[1] The Honorable William M. Gabler, Sr. presided over McReynolds' trial and entered the judgment of conviction. We will refer to Judge Gabler as the "sentencing court." The Honorable Emily M. Long entered the order denying McReynolds' postconviction motion. We will refer to Judge Long as the "postconviction court."

[2] All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

sentencing court filed a written statement with the reasons for its sentencing decision after the judgment of conviction was entered. We decline to apply the forfeiture rule to McReynolds' subsequent argument that his right to be present at sentencing was violated through the court's application of WIS. STAT. § 973.017(10m)(b), but we ultimately conclude that his as-applied constitutional claim in that regard is without authority and underdeveloped. While McReynolds has a constitutional and statutory right to be present at the imposition of his sentence, he does not show beyond a reasonable doubt that the court's use of § 973.017(10m)(b) to file a written statement of its rationale for the sentences imposed violated his constitutional right to be present at sentencing. Accordingly, we affirm.

## BACKGROUND

¶4     The State charged McReynolds in a four-count complaint after two informant-initiated controlled drug buys occurred.[3] The case proceeded to trial on two delivery of cocaine charges.

¶5     Investigator Aaron Ranallo of the Eau Claire County Sheriff's Office testified that he was "contacted by a confidential informant who indicated that [he] would be able to purchase cocaine from Mr. McReynolds." Ranallo, who had previously worked with the informant, coordinated with him to set up two controlled drug buys. Ranallo testified in detail about the process involved with controlled drug buys in general and for this case in particular. For each buy in this case, the

---

[3] McReynolds was initially charged with one count of delivery of cocaine (more than one gram but less than five grams), one count of delivery of cocaine (less than one gram), and two counts of misdemeanor bail jumping. On the first day of trial, the State moved to dismiss the misdemeanor bail jumping charges and to reduce the first count of delivery of cocaine to less than one gram. The circuit court granted both motions.

3

informant was provided with $150 in prerecorded money to purchase the drugs, he was searched beforehand, and he wore a wire and carried a video camera. After each drug buy took place, the informant gave an oral statement to Ranallo.

¶6     When asked about his motivation for contacting the police to conduct these controlled drug buys, the informant suggested that his motives were altruistic. He testified that he was a former drug user—who acknowledged being convicted of a crime ten times—and was "sort of" friends with McReynolds, but he "felt that [McReynolds] was trying to get me to use again…. So I felt that [McReynolds] needed to be off the streets." The informant was also paid $100 for each drug buy in exchange for cooperating with law enforcement.

¶7     The informant testified that he bought drugs from McReynolds during the first controlled drug buy on August 11, 2014. After the encounter, the informant provided police with an oral statement as well as three small plastic bags, which contained a white substance later confirmed to be cocaine. The State played the video of the drug buy for the jury, which was seven minutes and forty-seven seconds long, but the exchange itself was not visible, as the camera was in the palm of the informant's hand.

¶8     The jury learned that between the first and second buys, an altercation occurred between the informant and McReynolds. McReynolds had asked the informant to meet him, and when he arrived, McReynolds "hit [the informant] in the nose, broke [his] nose. Then [McReynolds] left." The informant testified that McReynolds did this because the informant "owed one of [McReynolds'] friends some money." According to the informant, the friend was an individual called "KG." The State then asked, "[W]ho is KG?" The informant responded, "One of [McReynolds'] Vice Lord friends."

4

¶9      Days after the altercation, McReynolds called the informant and apologized, stating, "My fault. I shouldn't have done what I did." During that same call, McReynolds also told the informant, "And I'm still all good," meaning that he had drugs available for purchase. The informant and Ranallo then set up the second drug buy. The informant admitted that his motivation for offering to conduct the second drug buy was that he was "mad" at McReynolds. However, he also testified that his anger did not motivate him to lie about what happened.

¶10     The second controlled drug buy took place on August 18, 2014. The informant testified that when McReynolds arrived at the agreed-upon location, McReynolds was with the individual previously identified as KG. The State asked again, "And who is KG?" The informant responded, "His Vice Lord brother." The informant got into the vehicle with McReynolds and KG, and they "went to a location around the corner somewhere, a couple blocks down the street." According to the informant, McReynolds got out and "went between some houses, came back, [and] handed [him] the cocaine." When Ranallo met up with the informant, the informant again "turned over two plastic bags containing a white substance," which later tested positive for cocaine. The State also played the video of the second drug buy for the jury, which lasted approximately thirty-two minutes. McReynolds was visible on the video, but the drug exchange was not visible.

¶11     The jury found McReynolds guilty of both charges. At the sentencing hearing, the court stated its sentencing decision on the record, imposing five years' initial confinement and five years' extended supervision on each count, to be served concurrently. The sentencing court then invoked WIS. STAT. § 973.017(10m)(b), explaining that the statute allowed the court to "state the reasons for its sentencing decision in writing and include the written statement in the record." According to the court,

5

I've never done that before, but I'm going to do it here today, and the reason for that is, Mr. McReynolds, really, as a courtesy to you, and I mean this sincerely, as a courtesy to you. I don't want to go through the long and ponderous explanation [here] that I'm going to make in—in writing because I just think that you may consider it demeaning and insulting. I don't want you to feel demeaned. I don't want you to feel insulted. I don't want you feel lectured to.

You know, and particularly in light of the fact that, you know, in this particular case there were three separate times in which you refused to come to court, one on October 3rd, 2014; another one on December 8th, 2014; and then, finally, the long experience we had on the first day of the jury trial on April 9th, 2015 when you refused to come, you were forced to show up in the wheelchair, you were disruptive in the courtroom, you had to be removed to the video room, you rolled off the wheelchair and unplugged the video connection, and you had to be restrained by jail staff. You ultimately did cooperate, but, really, I think that it is not in your interest for me to go through the long analysis [at the hearing] that I am going to do in writing.

Three days later, the court filed its "Written Reasons for Sentencing Decision."[4]

¶12    McReynolds' first postconviction counsel filed a WIS. STAT. RULE 809.32 no-merit report. McReynolds subsequently filed a "lengthy document challenging his convictions," which we deemed his response to the no-merit report. We rejected the no-merit report, noting an issue of arguable merit regarding the jury instructions. McReynolds' first postconviction counsel then informed this court that he would file a WIS. STAT. § 974.02 postconviction motion, and we dismissed the no-merit appeal. McReynolds' subsequently filed postconviction motion addressed

---

[4] As McReynolds does not challenge the sentencing court's exercise of discretion as to the sentences it imposed, we will not recount the sentencing factors it considered.

only the jury instruction issue that we previously identified in our no-merit review.[5] After a *Machner*[6] hearing, where McReynolds' trial counsel testified and McReynolds refused to appear, the postconviction court denied the motion.

¶13 McReynolds then filed a notice of appeal from the postconviction court's oral ruling. In response, we entered an order stating that we lacked jurisdiction to review the ruling until it was reduced to writing and extending the deadline for the court to decide the postconviction motion. We also stated that McReynolds' notice of appeal would be "deemed filed on the date of the entry of the order on the postconviction motion."[7] The court filed the written order on September 26, 2019.[8]

---

[5] We agree with the State that McReynolds has abandoned this jury instruction issue by failing to raise it on appeal. *See A.O. Smith Corp. v. Allstate Ins. Cos.*, 222 Wis. 2d 475, 491, 588 N.W.2d 285 (Ct. App. 1998) ("[A]n issue raised in the trial court, but not raised on appeal, is deemed abandoned.").

[6] *State v. Machner*, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979).

[7] McReynolds' postconviction motion was filed February 5, 2019. The *Machner* hearing occurred on June 14, 2019. However, the record also contains an order, entered February 26, 2019, denying the motion for postconviction relief. As the State acknowledges, it is unclear from the record why the postconviction court initially denied the motion, then later held a *Machner* hearing, and again orally denied the motion. We also noted this issue in our order, and we "deem[ed] the [February 26, 2019 order] to be superseded by the circuit court's decision to hold a hearing and rule further on the postconviction motion."

[8] During this period, McReynolds' first postconviction counsel also moved to withdraw, and the postconviction court granted the motion and ordered that the Office of the State Public Defender (SPD) appoint new counsel. The SPD filed a letter seeking reconsideration of the court's order, noting that the issues seemed to involve disagreements in legal strategy and that McReynolds believes "that counsel somehow holds racist views towards himself." In response, the court vacated its original order and entered a new order, allowing first postconviction counsel to withdraw but not ordering the SPD to appoint new counsel.

¶14     McReynolds, now represented by new postconviction counsel, filed a second postconviction motion that gives rise to this appeal.[9]  McReynolds sought a new trial based on the erroneous admission of both improper character and vouching evidence, or, in the alternative, ineffective assistance of counsel based on both of those issues.  He also sought resentencing based on the sentencing court's use of WIS. STAT. § 973.017(10m)(b), which he argued violated his right to be present at sentencing.  The State argued that McReynolds' newest postconviction motion was barred by *State v. Escalona-Naranjo*, 185 Wis. 2d 168, 517 N.W.2d 157 (1994), based on this being his "third series of postconviction arguments" and the fact that the postconviction court had already denied his prior motion.

¶15     Following a nontestimonial hearing, the postconviction court denied McReynolds' motion, concluding that there was no vouching evidence and that McReynolds was not prejudiced by counsel's failure to object to the improper character evidence.  The court did not reach the merits on McReynolds' argument that his sentencing occurred in an unconstitutional manner, as it concluded that the sentencing court complied with the WIS. STAT. § 973.017(10m)(b) requirements.  The court also did not address the *Escalona* bar.  McReynolds appeals.  We discuss additional facts below, where relevant to our analysis.

## DISCUSSION

---

On December 16, 2019, we entered an order extending the time for McReynolds to file his brief, noting this history and observing that it "appears that McReynolds is now proceeding pro se."  On January 14, 2020, the SPD filed a motion to extend the time for filing a postconviction motion or notice of appeal, asserting that the time to file a notice of appeal lapsed while the motion to withdraw as counsel was pending.  We granted that motion and later entered an order clarifying that we were construing the prior motion "as also including a notice of voluntary dismissal."  We dismissed McReynolds' appeal.

[9] McReynolds also filed another motion to extend the deadline to file a postconviction motion or notice of appeal, which we also granted.

## I. *Escalona* Bar

¶16 As an initial matter, the State again argues on appeal that this case is procedurally barred under *Escalona*. "We need finality in our litigation." *Escalona*, 185 Wis. 2d at 185. Thus, absent a sufficient reason, a defendant is procedurally barred from raising claims "in a [WIS. STAT. §] 974.06 motion that *could have been raised* on direct appeal or in a [WIS. STAT. §] 974.02 motion." *Escalona*, 185 Wis. 2d at 181-82, 184-86; § 974.06(4). Whether a sufficient reason is stated for failing to bring claims earlier is a question of law subject to de novo review. *State v. Romero-Georgana*, 2014 WI 83, ¶30, 360 Wis. 2d 522, 849 N.W.2d 668.

¶17 The State argues that because the postconviction court denied McReynolds' first postconviction motion, "this present motion is a successive motion and is procedurally barred." Citing *State v. Evans*, 2004 WI 84, ¶¶27, 29, 273 Wis. 2d 192, 682 N.W.2d 784, *abrogated on other grounds by State ex rel. Coleman v. McCaughtry*, 2006 WI 49, ¶29, 290 Wis. 2d 352, 714 N.W.2d 900, the State asserts that "[o]nce the circuit court denied McReynolds' original postconviction motion, McReynolds had the option to appeal that decision to this [c]ourt or let the time to appeal lapse," but McReynolds "did not have the option to file a successive WIS. STAT. § 974.02 motion that raised entirely new arguments." Further, the State claims that the arguments McReynolds now makes on appeal were known to him when he filed his first postconviction motion, and there is "simply no reason that McReynolds could not have made the arguments that he now makes in his first postconviction motion."

¶18 McReynolds contends that his claims are not barred, as he obtained permission from this court to file a successive WIS. STAT. § 974.02 motion after his

first appeal was voluntarily dismissed.[10]  According to McReynolds, he "is entitled to a (single) direct appeal from his judgment of conviction—and this is it."  Under the unique facts of this case, we agree.

¶19    As noted above, McReynolds' first postconviction counsel filed a no-merit report, which we denied based on a jury instruction issue.  McReynolds then filed a postconviction motion based on that purported error, alleging ineffective assistance of his trial counsel.  Once the postconviction court denied that motion, he appealed to this court.  While that appeal was pending, his first postconviction counsel moved to withdraw.  Both before and after McReynolds obtained new postconviction counsel, we granted both of McReynolds' requests to extend the WIS. STAT. RULE 809.30(2)(h) deadline to file a "notice of appeal *or* motion seeking postconviction" relief, and we granted the motion to voluntarily dismiss his first appeal.  (Emphasis added.)  The State did not object.

¶20    The State's reliance on *Evans* to object now is misplaced.  In *Evans*, the defendant asked appointed counsel "to close his file," allowed his direct appeal rights to lapse, and then sought to have his direct appeal rights reinstated two years late.  *Evans*, 273 Wis. 2d 192, ¶¶6-7, 11.  Here, we granted McReynolds' timely motion to file a successive postconviction motion and voluntarily dismiss his first appeal.  His direct appeal rights did not lapse.  Under the circumstances, and given

---

[10] McReynolds also argues that the State waived this argument.  McReynolds claims that despite the State arguing multiple times in its submissions before the postconviction court that the procedural bar set forth in *State v. Escalona-Naranjo*, 185 Wis. 2d 168, 517 N.W.2d 157 (1994), applied, the State waived its argument when it "retreated from requesting a ruling in its favor."  At the hearing, the State did again raise the issue, but it "defer[red]" to the court as to whether it would decide the motion on that basis, recognizing the pitfalls of "pav[ing] the way for a subsequent postconviction motion alleging ineffective assistance of postconviction counsel."  The court, thereafter, chose not to pursue the matter.  Under the circumstances, the State did not waive the argument.

the procedural history of this case, we conclude that McReynolds' subsequent appeal of the denial of his postconviction motion is not barred.

## II. *Ineffective Assistance of Counsel*

¶21 We next address McReynolds' argument that his trial counsel provided constitutionally ineffective assistance using the well-known, two-pronged analysis provided in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To prove ineffective assistance of counsel, a defendant must show both that counsel's performance was deficient and that the defendant was prejudiced by counsel's deficient performance. *State v. Sholar*, 2018 WI 53, ¶32, 381 Wis. 2d 560, 912 N.W.2d 89. Under the first prong, "[c]ounsel's conduct is constitutionally deficient if it falls below an objective standard of reasonableness." *State v. Thiel*, 2003 WI 111, ¶19, 264 Wis. 2d 571, 665 N.W.2d 305. However, "[j]udicial scrutiny of counsel's performance must be highly deferential." *Strickland*, 466 U.S. at 689. For the second prong, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. However, a defendant need not prove the outcome would more likely than not be different in order to establish prejudice in ineffective assistance cases. *Sholar*, 381 Wis. 2d 560, ¶44 (citing *Strickland*, 466 U.S. at 693). If the defendant fails on one prong, we need not examine the other prong. *Id.* at 697. "The ultimate determination of whether counsel's performance was deficient and prejudicial to the defense are questions of law which this court reviews independently." *State v. Johnson*, 153 Wis. 2d 121, 128, 449 N.W.2d 845 (1990).

11

¶22    The postconviction court denied McReynolds' second postconviction motion without an evidentiary hearing.  McReynolds now seeks a *Machner* hearing on his ineffective assistance of counsel claim.   A defendant, however, is not automatically entitled to an evidentiary hearing on his or her postconviction motion. *State v. Bentley*, 201 Wis. 2d 303, 308-11, 548 N.W.2d 50 (1996).  The circuit court is required to hold an evidentiary hearing only if the defendant alleges "sufficient material facts that, if true, would entitle the defendant to relief."  *State v. Allen*, 2004 WI 106, ¶14, 274 Wis. 2d 568, 682 N.W.2d 433.   Whether a defendant's motion "on its face" alleges sufficient material facts to entitle that defendant to relief is a question of law that we review de novo.  *Id.*, ¶9.  If, on the other hand, the defendant's motion "does not raise facts sufficient to entitle the movant to relief, or presents only conclusory allegations, or if the record conclusively demonstrates that the defendant is not entitled to relief," the circuit court may either grant or deny a hearing in its discretion.  *Id.*  We review this decision "under the deferential erroneous exercise of discretion standard."  *Id.*

¶23    McReynolds argues that his trial counsel provided ineffective assistance in two ways:  (1) by failing to object to Ranallo's testimony purportedly vouching for the truthfulness of the informant in violation of *Haseltine*; and (2) by failing to object to the confidential informant's statement that McReynolds was affiliated with the Vice Lord gang.  For the reasons that follow, we conclude that counsel did not provide ineffective assistance and that the postconviction court properly exercised its discretion by denying his motion without an evidentiary hearing.

¶24    McReynolds first claims that the State committed a *Haseltine* violation by eliciting improper testimony from Ranallo—that he believed the informant was telling the truth—and that counsel performed deficiently by failing

to object to that testimony. In ***Haseltine***, we held that "[n]o witness, expert or otherwise, should be permitted to give an opinion that another mentally and physically competent witness is telling the truth." ***Haseltine***, 120 Wis. 2d at 96. The purpose of this rule is to prevent a witness from usurping the jury's role as a "lie detector in the courtroom." *See **State v. Pittman***, 174 Wis. 2d 255, 268, 496 N.W.2d 74 (1993) (citation omitted); *see also **State v. Kleser***, 2010 WI 88, ¶104, 328 Wis. 2d 42, 786 N.W.2d 144 ("The essence of the rule prohibiting vouching testimony is that such testimony invades the province of the fact-finder as the sole determiner of credibility."). To determine whether a witness's testimony violates ***Haseltine***, we examine the testimony's purpose and effect. *See **Pittman***, 174 Wis. 2d at 268. This is a question of law that we review de novo. *See **State v. Davis***, 199 Wis. 2d 513, 519, 545 N.W.2d 244 (Ct. App. 1996). Further, even if a ***Haseltine*** violation occurred, it is only reversible error where the testimony "creates too great a possibility that the jury abdicated its fact-finding role" in relation to the witness or failed independently to find the defendant's guilt. ***Haseltine***, 120 Wis. 2d at 96.

¶25 McReynolds identifies four instances during the trial where Ranallo allegedly vouched for the informant's credibility in violation of ***Haseltine***. First, when Ranallo testified about an oral statement the informant gave after the first controlled drug buy, the State asked, "So do you believe this to be a truthful and accurate statement?" Ranallo responded, "Yes, I do." In the second instance, which occurred immediately after the first, the State asked Ranallo what *he* believed happened on the day of the first controlled drug buy, and Ranallo stated that he agreed with the informant's statement that McReynolds had sold the informant cocaine. The State then asked, "And do you have any reason to believe that [the informant] was in any way untruthful with respect to the information he provided to

you?" Ranallo responded, "No." Third, when discussing the second controlled buy and the altercation that occurred between McReynolds and the informant prior to that buy, the State asked Ranallo, "[W]ere you concerned about [the informant's] credibility at that point?" Ranallo said, "No," and when asked, "Why not?" Ranallo responded,

> [The informant] had explained that, you know, there was a physical altercation, and I—and [he] had said that he was injured during that. I met up with him, and he showed me the injuries that he had sustained, so I was able to corroborate that portion of it. And I was not given any information to lead me to believe that he was not being truthful.

¶26 The fourth, and final, instance involved the informant's oral statement after the second controlled drug buy. Similar to the first instance, the State asked Ranallo whether the informant's statement was "consistent with what [he] observed or perceived during [his] observations of the controlled buy," and Ranallo responded, "Yes." The State then asked, "Do you have any reason to believe that [the informant] was in any way untruthful about his observations that day?" Ranallo responded, "No."

¶27 McReynolds argues that "[t]he first of the four instances of vouching was the most problematic," and he admits that "Ranallo's other statements were arguably focused on external indicators of untruthfulness." He claims, however, that "those [other] statements served to bolster [Ranallo's] first statement, which was clearly vouching." He argues that his trial counsel performed deficiently as he should have objected to all four vouching statements and moved to strike them.

¶28 According to McReynolds, these facts are "akin to" the facts considered by this court in *State v. Patterson*, 2009 WI App 161, 321 Wis. 2d 752, 776 N.W.2d 602. There, the State asked a police investigator, "Do you believe [a

witness the investigator interviewed] was being truthful when she gave [certain] information to you …?" *Id.*, ¶36 (alterations in original). The investigator then answered, "I believe she was being truthful." *Id.* We concluded that "[i]t does not appear that this exchange was offered for any purpose other than bolstering the credibility of the other witness." *Id.* Nonetheless, while we "assume[d] that the exchange ran afoul of *Haseltine*," we held that the single instance of vouching, in the context of a seven-day trial, did not infect the trial with unfairness resulting in a denial of due process. *Patterson*, 321 Wis. 2d 752, ¶37. McReynolds argues that the exchange here was offered only to bolster the credibility of the informant, and, unlike in *Patterson*, it was not an isolated incident.

¶29 The State counters that when considered within the context of the questions at trial, "[n]one of the four allegedly improper statements here impermissibly interfered with the province of the jury to determine the credibility of any witness at trial," and the statements were not offered to bolster the informant's credibility.[11] The State relies upon *State v. Smith*, 170 Wis. 2d 701, 490 N.W.2d 40 (Ct. App. 1992), and *State v. Snider*, 2003 WI App 172, 266 Wis. 2d 830, 668 N.W.2d 784.

¶30 In *Smith*, a police detective testified at trial that the defendant's accomplice initially denied involvement in the crime but that the accomplice later changed his story to what the detective perceived to be the truth. *Smith*, 170 Wis. 2d at 719. We concluded that neither the purpose nor the effect of the testimony was

---

[11] The State argues that *State v. Haseltine*, 120 Wis. 2d 92, 352 N.W.2d 673 (Ct. App. 1984), specifically "prohibits a witness from testifying that another witness is telling the truth *at trial*." *State v. Snider*, 2003 WI App 172, ¶27, 266 Wis. 2d 830, 668 N.W.2d 784 (emphasis added). McReynolds counters that pursuant to *State v. Kleser*, 2010 WI 88, ¶104, 328 Wis. 2d 42, 786 N.W.2d 144, the *Haseltine* rule also applies "where an expert vouches for an out-of-court declarant." As we conclude no *Haseltine* violation occurred here, we need not address this issue.

to attest to the accomplice's truthfulness, as the testimony "was not an attempt to bolster [the accomplice's] credibility, but was simply an explanation of the course of events during the interrogation." *Id.* at 718-19. We further explained that we did not believe that there was a risk that the jury used the detective's testimony to assess the accomplice's truthfulness, as the jury was instructed "that it was the sole judge of the witnesses' credibility at the trial" and we presume that the jury follows those instructions. *Id.* at 719 (citing *State v. Truax*, 151 Wis. 2d 354, 362, 444 N.W.2d 432 (Ct. App. 1989)).

¶31 In *Snider*, a child sexual abuse case, defense counsel repeatedly elicited testimony that the detective believed the victim rather than Snider in order to show that the detective was biased. *Snider*, 266 Wis. 2d 830, ¶¶25-26. Citing the reasoning in *Smith*, we concluded that

> the detective similarly testified to what he believed at the time he was conducting the investigation, not whether Snider or the victim was telling the truth at trial. The detective, in response to questions on cross-examination, recounted how he conducted the interrogation and his thought processes at that time. As in *Smith*, his testimony did not violate the *Haseltine* rule.

*Snider*, 266 Wis. 2d 830, ¶27.

¶32 We conclude that, like in *Snider* and *Smith*, Ranallo's statements were not offered to bolster the informant's credibility; instead, they were offered to explain the course of events during the interrogation. As such, they did not constitute improper vouching testimony, and there was no *Haseltine* violation.

¶33 The first, second, and fourth instances of alleged vouching were elicited because law enforcement officers were unable to directly observe the controlled drug buys. The State offered Ranallo's testimony to establish whether

the informant's oral statements given to law enforcement immediately after the drug buys were consistent with Ranallo's observations, including those from the videos and audio recordings. Ranallo's opinions about the truthfulness of the informant's statements were relevant to explain both the reason law enforcement relied upon the informant's information—given their inability to observe the exchanges—and why they chose not to pursue any further investigation. Ranallo did not testify that the informant told the truth at trial. Rather, similar to the testimony provided in *Smith* and *Snider*, Ranallo testified he thought the information provided by the informant at the time of the controlled buys was truthful, as it was supported by what he observed and it helped explain why he conducted the investigation as he did.

¶34    The third statement referenced the altercation between McReynolds and the informant and whether Ranallo was concerned about the informant's credibility "at that point." Ranallo responded that he "was not given any information to lead [him] to believe that [the informant] was not being truthful." He stated that the informant "showed me the injuries …, so I was able to corroborate that portion of it." The inquiry and response related to whether Ranallo could have further confidence in what the informant told him about the altercation between McReynolds and himself and whether the altercation would provide the informant with a motive to participate in or lie about the second controlled buy. Ranallo's testimony regarding the informant's truthfulness as to the altercation was offered to explain why Ranallo continued in his investigation of McReynolds with the assistance of the informant and why the second drug buy took place despite the altercation.

¶35    In summary, the purpose and effect of Ranallo's four statements at trial were to explain what he believed at the time he was conducting the investigation and why he proceeded with it. The statements were not offered to bolster the

informant's credibility at trial. Further, the statements did not interfere with the province of the jury to determine the credibility of the informant, who himself testified extensively at trial.[12] Thus, there was no *Haseltine* violation, and McReynolds' trial counsel was not deficient for failing to object to Ranallo's admissible testimony. *See State v. Maday*, 2017 WI 28, ¶55, 374 Wis. 2d 164, 892 N.W.2d 611 ("Counsel's performance cannot be considered deficient for failing to object to admissible evidence."). As we find no deficient performance, we need not reach the prejudice prong.

¶36     McReynolds next claims that his trial counsel performed deficiently by failing to object to improper, prejudicial character evidence that McReynolds was affiliated with the Vice Lord gang.[13] Character evidence, meaning "[e]vidence of a person's character or a trait of the person's character," is inadmissible "for the purpose of proving that the person acted in conformity therewith on a particular occasion," WIS. STAT. § 904.04(1), subject to certain exceptions not relevant here, *see* § 904.04(1)(a)-(c), (2).

¶37     Twice during the trial, the State elicited testimony from the informant regarding the individual identified as "KG." The first time, the informant identified KG as "one of" McReynolds' "Vice Lord friends." The second time, the informant identified KG as McReynolds' "Vice Lord brother." McReynolds' trial counsel did not object in either instance.

---

[12] We note also that, like in *State v. Smith*, 170 Wis. 2d 701, 719, 490 N.W.2d 40 (Ct. App. 1992), the jury in this case was instructed that the jury is the sole judge of the witnesses' credibility.

[13] We note that in *State v. Burton*, 2007 WI App 237, 306 Wis. 2d 403, 743 N.W.2d 152, we referred to the gang as the "Vice Lords gang" or the "Vice Lords." However, in this opinion, we will refer to the gang as the Vice Lord gang because that is how it is referenced in the record before us.

¶38    McReynolds argues that the references to the Vice Lord gang constituted character evidence. Citing *State v. Burton*, 2007 WI App 237, 306 Wis. 2d 403, 743 N.W.2d 152, McReynolds asserts that "[t]he Vice Lord gang is notorious for drugs and violence." Thus, he argues, "[t]estimony linking Mr. McReynolds to a gang implied that Mr. McReynolds had a propensity for crime. Not only was this character evidence, there was no foundation for the accusation."

¶39    At the hearing on the postconviction motion, the court agreed that the evidence was improper:

> I absolutely agree there should have been witness prep to indicate that sort of statement should not come in. I absolutely agree that once you get that answer, the Vice Lord friend, then you have to do what you can to stay away from a repeat of that answer.
>
> You know, I don't know all the gang names. I seriously doubt that the average juror from Eau Claire County knows all the gang names.
>
> But that being said, saying somebody's a Vice Lord brother, I think most people if they're thinking about it would have an idea as to what that's referring to. So clearly those statements are problematic as defense stated.

¶40    Nevertheless, despite noting that the references to the Vice Lord gang was "an absolutely not proper reference," the postconviction court acknowledged that "it is a very minor reference." The court stated that it could have defense counsel testify as to whether the failure to object was part of his trial strategy, suggesting that "object[ing] and bring[ing] great attention" to the reference is "probably best … avoid[ed]." Ultimately, however, the court found that the Vice Lord references "in the general context of the trial" were not "sufficient to undermine the legitimacy of the conviction."

¶41    For the purpose of this appeal, and given the postconviction court's finding that the evidence was improper, we will assume without deciding that defense counsel's failure to object to the Vice Lord references constituted deficient performance.    We conclude, however, that McReynolds suffered no resulting prejudice.

¶42    As to the prejudicial effect of counsel's failure to object to the Vice Lord references, McReynolds argues only that "[t]he State improperly bolstered its case by disparaging Mr. McReynolds' character."  His arguments on this issue are undeveloped, spanning only one short paragraph.  Further, as the postconviction court found, and we agree, the informant's references to the Vice Lord gang during the trial were both "quick" and "minor reference[s]," and the topic was not highlighted during questioning.  While we acknowledge, as McReynolds suggests, that this case was largely based on witness credibility, we disagree that the State's case could be categorized as weak.  The jury heard consistent testimony from the confidential informant, Ranallo, and other officers, and that testimony was also consistent with the video and audio evidence presented.

¶43    Given all the evidence presented at trial, we cannot conclude, and McReynolds has failed to establish, that there is a reasonable probability that the result of the trial would have been different absent the Vice Lord references.  *See Sholar*, 381 Wis. 2d 560, ¶¶44, 46.  Because McReynolds must satisfy both prongs to show ineffective assistance of counsel and he has failed to establish prejudice, the postconviction court did not err when it denied his postconviction motion without a *Machner* hearing.

III. *WISCONSIN STAT. § 973.017(10m)(b)*

¶44    McReynolds' final arguments relate to the sentencing court's invocation of WIS. STAT. § 973.017(10m)(b) to issue a written explanation of the rationale for the sentences it previously imposed at the sentencing hearing. McReynolds argues that this procedure is unconstitutional as applied to him because it violated his constitutional rights to a public trial and to be present at sentencing.

¶45    The State first counters that McReynolds forfeited these arguments. The State further argues that "McReynolds conflates two distinct events: actual imposition of the sentence and the explanation for the sentence…. [H]e has a right to be physically present for the former but not the latter."  For the reasons that follow, we conclude that the State correctly argues that McReynolds forfeited his public trial claim and that he fails to meet his burden to prove beyond a reasonable doubt that the sentencing court's use of § 973.017(10m)(b) violated his constitutional right to be present at sentencing.

¶46    We first address the State's forfeiture claims.  McReynolds did not object at the sentencing hearing to the court's use of WIS. STAT. § 973.017(10m)(b). Accordingly, the State argues that by failing to object, McReynolds has forfeited his constitutional claims.   We review de novo whether a defendant adequately preserved his or her right to appellate review of a particular claim.  *State v. Coffee*, 2020 WI 1, ¶17, 389 Wis. 2d 627, 937 N.W.2d 579.

¶47    As to the right to a public trial,[14] the State argues that McReynolds forfeited this argument under *State v. Pinno*, 2014 WI 74, 356 Wis. 2d 106, 850 N.W.2d 207.  In *Pinno*, our supreme court determined that the right to a public trial

---

[14] The Sixth Amendment to the United States Constitution guarantees criminal defendants the right to a public trial.  U.S. CONST. amend. VI; *State v. Ndina*, 2009 WI 21, ¶40, 315 Wis. 2d 653, 761 N.W.2d 612.

is subject to forfeiture; thus, "the Sixth Amendment right to a public trial may be forfeited when a defendant knows that the judge has ordered the public to leave the courtroom but does not object." *Id.*, ¶¶57, 63.

¶48   McReynolds attempts to sidestep *Pinno* by arguing that *Coffee* and *State v. Grady*, 2007 WI 81, 302 Wis. 2d 80, 734 N.W.2d 364, require a different result:  namely, that McReynolds was not required to contemporaneously object at sentencing.  Instead, McReynolds contends that his postconviction motion was a timely means of raising the sentencing error.

¶49   In *Coffee*, the defendant argued that the circuit court violated his due process rights by relying on inaccurate information at sentencing, but he failed to object to the inaccurate information.  *Coffee*, 389 Wis. 2d 627, ¶1.  Our supreme court concluded that "the forfeiture rule does not apply to previously unknown, inaccurate information first raised by the State at sentencing.  Rather, a postconviction motion is also a timely manner in which to bring that claim." *Id.*, ¶3.  In *Grady*, the defendant argued that the circuit court erroneously exercised its discretion by failing to consider the applicable sentencing guidelines for the crime considered at sentencing.  *Grady*, 302 Wis. 2d 80, ¶¶10-11.  In a footnote, our supreme court rejected the State's argument that the defendant "waived the issue[]," explaining that "[f]iling a postconviction motion is a timely means of raising an alleged error by the circuit court during sentencing." *Id.*, ¶14 n.4.

¶50   We disagree that this case is controlled by *Coffee* and *Grady*.  This is not a case where McReynolds sought to challenge the basis for the sentencing court's exercise of discretion as to its decision.  McReynolds takes no issue with the reasons the court relied upon to issue its written sentencing explanation, nor does

he argue that the court erroneously exercised its discretion in imposing his sentences or explaining its rationale for them.

¶51     Instead, McReynolds argues that the process the sentencing court used to explain its sentencing rationale violated his rights. McReynolds was made aware of the court's intention to utilize WIS. STAT. § 973.017(10m)(b), and the court explained its reasons for doing so on the record and in McReynolds' presence. McReynolds could and should have raised his objection to the court issuing a written explanation of its sentencing rationale at that time. Had he done so, the court could have timely considered the issue, addressed any legal concerns with following the statute, and properly preserved the issue for appeal. *See Schonscheck v. Paccar, Inc.*, 2003 WI App 79, ¶11, 261 Wis. 2d 769, 661 N.W.2d 476 ("A fundamental appellate precept is that we 'will not … blindside [circuit] courts with reversals based on theories which did not originate in their forum.'" (citation omitted)). We agree with the State that, pursuant to *Pinno*, McReynolds has forfeited his argument that his right to a public trial was violated.[15]

¶52     The State also argues that McReynolds forfeited his argument regarding the violation of his constitutional right to be present at sentencing. McReynolds counters that, pursuant to *State v. Soto*, 2012 WI 93, 343 Wis. 2d 43, 817 N.W.2d 848, "[t]he right to be present cannot be forfeited by inaction." In *Soto*, the defendant and his attorney appeared for his scheduled plea hearing via videoconferencing. *Id.*, ¶6. Although Soto "agreed to the use of videoconferencing

---

[15] To the extent that review may be available under an ineffective assistance of counsel framework, *see State v. Pinno*, 2014 WI 74, ¶¶81-86, 356 Wis. 2d 106, 850 N.W.2d 207, we note that McReynolds does not advance that argument.

for the hearing," he later sought postconviction relief, arguing that the videoconferencing violated due process and his statutory right to be present under WIS. STAT. § 971.04(1)(g).[16] *Soto*, 343 Wis. 2d 43, ¶¶7, 11. Our supreme court concluded that

> a defendant's right to be present in the same courtroom as the presiding judge at the proceedings listed in [§] 971.04(1)(g) is particularly important to the actual or perceived fairness of the criminal proceedings. Therefore, if this right is to be relinquished, it must be done by waiver, the "intentional relinquishment of a known right."

*Soto*, 343 Wis. 2d 43, ¶40 (citation omitted).

¶53     The State agrees that under *Soto*, a defendant's *statutory* right to be present at "the imposition of sentence," pursuant to WIS. STAT. § 971.04(1)(g), cannot be forfeited; it must be waived. The State argues, however, that "assuming *Soto* applies equally to the constitutional right to presence at sentencing, *Soto*'s waiver rule extends only as far as the imposition of a sentence." It is the State's position that a circuit court's sentencing decision and its explanation of its reasons for the sentence imposed are "plainly distinct events." According to the State, McReynolds was present for "the imposition of sentence"; therefore, "*Soto*'s waiver

---

[16] WISCONSIN STAT. § 971.04(1) provides:

> (1) Except as provided in subs. (2) and (3), the defendant shall be present:
>
> > (a) At the arraignment;
> > (b) At trial;
> > (c) During voir dire of the trial jury;
> > (d) At any evidentiary hearing;
> > (e) At any view by the jury;
> > (f) When the jury returns its verdict;
> > (g) At the pronouncement of judgment and the imposition of sentence;
> > (h) At any other proceeding when ordered by the court.

rule is inapposite" and McReynolds "forfeited any argument that WIS. STAT. § 973.017(10m)(b) was applied in violation of his constitutional right."

¶54    Given the importance of the right at issue, we decline to apply the forfeiture rule to McReynolds' argument that his right to be present at sentencing was violated through the sentencing court's application of WIS. STAT. § 973.017(10m)(b), and we will address the claim on its merits.  *See **State v. Erickson***, 227 Wis. 2d 758, 766, 596 N.W.2d 749 (1999) ("[T]he [forfeiture] rule is one of judicial administration and ... appellate courts have authority to ignore the [forfeiture].").

¶55    As noted above, this case requires us to interpret WIS. STAT. § 973.017(10m).  The statute provides:

> (a) The court shall state the reasons for its sentencing decision and, except as provided in par. (b), shall do so in open court and on the record.
>
> (b)  If the court determines that it is not in the interest of the defendant for it to state the reasons for its sentencing decision in the defendant's presence, the court shall state the reasons for its sentencing decision in writing and include the written statement in the record.

Sec. 973.017(10m).  Under the statute, "sentencing decision" is defined as

> a decision as to whether to impose a bifurcated sentence under [WIS. STAT. §] 973.01 or place a person on probation and a decision as to the length of a bifurcated sentence, including the length of each component of the bifurcated sentence, the amount of a fine, and the length of a term of probation.

Sec. 973.017(1).

¶56    The issue of whether a circuit court's use of WIS. STAT. § 973.017(10m) to state the reasons for its sentencing decision in writing, rather

than orally in court at the time of the sentencing hearing, violates a defendant's constitutional right to be present at sentencing is one of first impression in this state. "Statutory interpretation begins with the language of the statute." *State v. Mercado*, 2021 WI 2, ¶43, 395 Wis. 2d 296, 953 N.W.2d 337 (citing *State ex rel. Kalal v. Circuit Ct. for Dane Cnty.*, 2004 WI 58, ¶45, 271 Wis. 2d 633, 681 N.W.2d 110). "If the meaning of the statute is plain, we ordinarily stop the inquiry." *Kalal*, 271 Wis. 2d 633, ¶45 (citation omitted). "Statutory language is given its common, ordinary, and accepted meaning," but "[c]ontext is important to meaning. So, too, is the structure of the statute in which the operative language appears." *Id.*, ¶¶45-46. Thus, "statutory language is interpreted in the context in which it is used; not in isolation but as part of a whole; in relation to the language of surrounding or closely-related statutes; and reasonably, to avoid absurd or unreasonable results." *Id.*, ¶46. Statutory interpretation presents a question of law we review de novo. *Grady*, 302 Wis. 2d 80, ¶14.

¶57    This appeal also requires us to consider whether WIS. STAT. § 973.017(10m)(b) is constitutional as applied to McReynolds. "The constitutionality of a statute is a question of law that we review de novo." *State v. Wood*, 2010 WI 17, ¶15, 323 Wis. 2d 321, 780 N.W.2d 63. Our review begins with the presumption that a statute is constitutional; the party making the as-applied challenge carries the burden of proving that the statute "is unconstitutional beyond a reasonable doubt." *Id.* "Under [an as-applied] challenge, the challenger must show that his or her constitutional rights were actually violated." *Id.*, ¶13. We evaluate as-applied challenges "considering the facts of the particular case in front of us, 'not hypothetical facts in other situations.'" *Id.* (citation omitted).

¶58    Here, McReynolds argues that WIS. STAT. § 973.017(10m)(b) is unconstitutional as applied to him. He asserts that a defendant has a constitutional

due process right to be present at sentencing, as it is a critical proceeding. *See Kentucky v. Stincer*, 482 U.S. 730, 745 (1987) ("[A] defendant is guaranteed the right to be present at any stage of the criminal proceeding that is critical to its outcome if his [or her] presence would contribute to the fairness of the procedure."). "Wisconsin recognizes and protects three due process rights of a defendant at sentencing." *State v. Perez*, 170 Wis. 2d 130, 138, 487 N.W.2d 630 (Ct. App. 1992). "First, the defendant has a right to be present at the sentencing and to be afforded the right of allocution.[17]   Second, the defendant has the right to be represented by counsel.  Finally, the defendant has the right to be sentenced on the basis of true and correct information." *Id.*

¶59     McReynolds claims that the sentencing rationale is "intrinsic to the pronouncement of the sentence," and, thus, he was denied his right to be present at sentencing when the sentencing court filed its "Written Reasons for Sentencing Decision."   Given that a defendant has a right to be present at sentencing, McReynolds argues, WIS. STAT. § 973.017(10m)(b) may be used only where the defendant waives his or her right to be present.[18]  We disagree and conclude that although a defendant has a statutory and constitutional right to be present when a sentence is imposed, McReynolds has failed to prove beyond a reasonable doubt that the court's use of § 973.017(10m)(b), without his waiver, violated his right to be present at sentencing.

---

[17] *But see **State v. Greve***, 2004 WI 69, ¶31, 272 Wis. 2d 444, 681 N.W.2d 479 (clarifying prior decisions relying on a federal constitutional right of allocution and "withdrawing the language that implies there is a due process right of allocution under the federal constitution, in all circumstances").

[18] We note that McReynolds does not allege a facial constitutional challenge to WIS. STAT. § 973.017(10m)(b), as he concedes there would be no constitutional or statutory violation if a defendant waived his or her right to be present when the circuit court stated the rationale for the sentence imposed.

¶60 It is clear from the plain language of WIS. STAT. § 973.017(10m) that a circuit court's "sentencing decision" and the pronouncement of "the reasons for its sentencing decision" are distinct events. As the State notes, "sentencing" is not defined under § 973.017. Rather, WIS. STAT. RULE 809.30(1)(f) defines "sentencing" as "the imposition of a sentence, a fine, or probation in a criminal case." *See also Sentencing*, BLACK'S LAW DICTIONARY (11th ed. 2019) ("The judicial determination of the penalty for a crime."). In accordance with those definitions, a "sentencing decision" under § 973.017(10m) is properly defined as "a decision as to whether to *impose* a bifurcated sentence … or place a person on probation and a decision as to the length of a bifurcated sentence," which includes the length of the initial incarceration and extended supervision, the amount of a fine, and the length of probation. Sec. 973.017(1) (emphasis added). Neither definition of sentencing includes a court's statement of the *reasons* for the imposition of a sentence. Instead, the language of § 973.017(10m) clearly articulates the legislature's intent to separate the "sentencing decision" from the "reasons for [the court's] sentencing decision." Under the statute, the reasons for the sentencing decision *must* ("shall") be stated "in open court and on the record," *except* "[i]f the court determines that it is not in the interest of the defendant for it to state the reasons for its sentencing decision in the defendant's presence." Sec. 973.017(10m)(a)-(b). Accordingly, we agree with the State that the sentencing decision, which includes the imposition of sentence, and the pronouncement of the reasons for the sentencing decision are distinct events under the statute.

¶61 McReynolds urges us to reject this distinction. He argues that "[t]he sentencing rationale is intrinsic to the pronouncement of sentence. If a court were to simply announce numerical figures, the sentence would be summarily vacated on

appeal." Although we agree with McReynolds' basic premise, as far as it goes, it does not follow that the statute violates his constitutional rights.

¶62 McReynolds correctly argues that the sentencing court must detail its reasons for selecting the particular sentence imposed. *See State v. Gallion*, 2004 WI 42, ¶¶39, 41-42, 45, 270 Wis. 2d 535, 678 N.W.2d 197.

> In all Anglo-American jurisprudence a principal obligation of the judge is to explain the reasons for his actions. His decisions will not be understood by the people and cannot be reviewed by the appellate courts unless the reasons for decisions can be examined. It is thus apparent that requisite to a prima facie valid sentence is a statement by the trial judge detailing his reasons for selecting the particular sentence imposed.

*McCleary v. State*, 49 Wis. 2d 263, 280-81, 182 N.W.2d 512 (1971). In *Gallion*, our supreme court explained that "[t]he legislature well recognized that explaining the reasons for the particular sentence should not be optional for the circuit court under truth-in-sentencing. It codified the requirement adopted in *McCleary* by enacting [WIS. STAT. §] 973.017(10m) (2001-02)."

¶63 WISCONSIN STAT. § 973.017(10m), however, in no way dispenses with the requirement that the circuit court explain its reasons for its sentencing decision on the record. It merely provides an alternative method where, in its discretion, "the court determines that it is not in the interest of the defendant for it to state the reasons" in the defendant's presence. Sec. 973.017(10m)(b). The sentencing rationale must still be provided under the statute, but the court may do so in writing and include the written statement in the record. This procedure allows for public and appellate review at least equivalent to that available through an oral pronouncement.

¶64　To the extent McReynolds argues that the dichotomy between the sentencing decision and the reasons for the sentence identified by WIS. STAT. § 973.017(1) and (10m) violates his *constitutional* right to be present at sentencing, he has presented no legal authority for such a claim.  In other words, he has provided no legal support for his argument that his constitutional due process right to be present at sentencing extends to the court's explanation of its sentencing rationale. In reply, McReynolds advances a conclusory argument, citing ***Soto***, 343 Wis. 2d 43, ¶40, that "[a] defendant's right to be present during sentencing is 'particularly important to the actual or perceived fairness of the criminal proceedings'"; thus, he contends, "[t]o ensure that sentencing is fair and receives the solemnity it deserves, the defendant has a right to be in the presence of the judge when the basis for the sentence is given."[19]  We are unconvinced.

¶65　McReynolds has not argued how or why *his* presence during the explanation of the sentencing decision "would contribute to the fairness of the procedure." *See **Stincer***, 482 U.S. at 745.  While a defendant has a due process right to be "present at the sentencing," *see **Perez***, 170 Wis. 2d at 138, McReynolds was provided with the three due process rights identified in ***Perez*** during the sentencing hearing.  It does not necessarily follow that due process required that McReynolds be present when the sentencing court provided its reasons for its sentencing

---

[19] McReynolds also notes that our supreme court explained in ***Soto*** that "[r]equiring that the defendant be present in the courtroom is guided also by the belief that a courtroom is a setting epitomizing and guaranteeing 'calmness and solemnity,' so that a defendant may recognize that he [or she] has had access to the judicial process in a criminal proceeding." *See **Soto***, 343 Wis. 2d 43, ¶23 (citation omitted).  We disagree that the WIS. STAT. § 973.017(10m)(b) procedure as utilized in this case undermined this purpose.  The sentencing court explained its reasons for invoking the statute on the record, noting that the court was providing a written explanation of its sentencing decision "as a courtesy" to McReynolds because it did not think that McReynolds would listen well to its rationale and would "consider it demeaning and insulting."  Given McReynolds past behavior in court, this approach was a reasonable way to guarantee "calmness and solemnity" while still allowing McReynolds the opportunity for access to the judicial process.  *See **Soto***, 343 Wis. 2d 43, ¶23.

decision, particularly where the court was required to make the written statement of its sentencing rationale a part of the record and thus available to McReynolds. At the point where the court provides the rationale for the sentence imposed, the defendant has no further opportunity to contribute to the court's decision. McReynolds does not explain how his presence during the court's statement of its sentencing rationale would have affected the fairness of the procedure or the court's sentencing explanation in any way. Given our presumption that WIS. STAT. § 973.017(10m) is constitutional, McReynolds has failed to meet his burden to overcome that presumption beyond a reasonable doubt. *See Wood*, 323 Wis. 2d 321, ¶15.

¶66 McReynolds also relies upon *Soto* to argue that given a defendant's right to be present at sentencing, WIS. STAT. § 973.017(10m)(b) may only be utilized where the defendant affirmatively waives this right. *See Soto*, 343 Wis. 2d 43, ¶40. He faults the sentencing court for failing to enter into a colloquy with him to determine whether he was "agreeable" to the procedure. Again, the holding in *Soto* was based on the *statutory* right of a defendant to be present at "the pronouncement of judgment and the imposition of sentence" under WIS. STAT. § 971.04(1)(g). As the State argues, "assuming *Soto* applies equally to the constitutional right to presence at sentencing, *Soto*'s waiver rule extends only as far as the imposition of a sentence," not the "court's announcement of the 'reasons for its sentencing decision.'" We agree.

¶67 The plain language of WIS. STAT. § 973.017(10m)(b) permits the circuit court to make the discretionary determination "that it is not in the interest of the defendant for it to state the reasons for its sentencing decision in the defendant's presence." There is nothing in the language of the statute requiring the defendant to assent to that determination. Further, *Soto* was based on the *statutory* right of a

31

defendant to be present at "the pronouncement of judgment and the imposition of sentence" under WIS. STAT. § 971.04(1)(g). As we determined above, the sentencing decision—defined as "a decision as to whether to *impose* a bifurcated sentence … or place a person on probation and a decision as to the length of a bifurcated sentence"—is distinct under our statutes from the reason for the sentencing decision. *See* § 973.017(1) (emphasis added); *see also* § 971.04(1)(g) ("the defendant shall be present … [at] the *imposition* of sentence" (emphasis added)). ***Soto*** is therefore distinguishable.

¶68    McReynolds was present when his sentences were imposed, and he has not established that his due process right to be present at sentencing was violated. At the sentencing hearing, the court stated on the record all the documents it reviewed in anticipation of sentencing, including the presentence investigation report (PSI) prepared for this case, the PSI in McReynolds' previous case, and the sentencing transcript in the previous case. The sentencing court then asked McReynolds if there was anything in the PSI to which he objected, and he indicated that there were "a couple of errors that I see in there, but it's—it's pointless, you know."[20] The court reviewed McReynolds' criminal history with the parties on the record, noting that it would not consider his juvenile record, and addressed each

---

[20] McReynolds refused to identify the errors. At sentencing, he attempted to have his attorney removed and represent himself. When the sentencing court refused his request, McReynolds stated:

> I just want to proceed and get the time that you're gonna give me and just go for my appeals because, like I said, sir, this—this gentleman, he's a good lawyer, but he's not representing my interest, and that's all I'd just like to state for the record, that, you know, with all due respect to this Court, I'm not gonna be a jerk like I usually be and loud and crazy. I'm just gonna state that, for the record, from here on out I just choose not to say anything else for the record because I'm not in agreement with this attorney representing me at today's proceedings, with all due respect.

charge from his adult record, asking whether McReynolds disputed those charges. The court also inquired about the sentencing credit to which McReynolds was entitled. Both the State and McReynolds offered lengthy sentencing arguments, and McReynolds was afforded the right of allocution.

¶69  In all, McReynolds was provided the right to be present and to allocution, the right to counsel, and an adequate opportunity to review or rebut the information the sentencing court relied on to impose its sentences. *See Perez*, 170 Wis. 2d at 138; *State v. Loomis*, 2016 WI 68, ¶53, 371 Wis. 2d 235, 881 N.W.2d 749 (recognizing that defendants must have an "opportunity to refute, supplement or explain" information at sentencing). The court then reviewed the sentencing factors it was required to consider as well as the factors it may consider, and, after explaining its reasons for invoking WIS. STAT. § 973.017(10m)(b) on the record,[21] it imposed McReynolds' bifurcated sentences.

¶70  We are satisfied that McReynolds has failed to overcome the presumption that WIS. STAT. § 973.017(10m)(b) is constitutional, and he has failed to prove beyond a reasonable doubt that the court's use of that sentencing procedure violated his constitutional right to be present at sentencing.[22]

*By the Court.*—Judgment and order affirmed.

---

[21] McReynolds does not challenge the sentencing court's reasons for invoking WIS. STAT. § 973.017(10m)(b) on appeal. Thus, we will address those reasons no further.

[22] We note that a sentencing court's decision to utilize WIS. STAT. § 973.017(10m)(b) is not a common practice, and our decision should not be read as endorsing the use of this procedure, especially if a defendant affirmatively balks at the use of the procedure. We conclude, however, that use of the statutory procedure did not violate McReynolds' constitutional right to be present at sentencing.